**Holly J. WHITE, Plaintiff,**

v.

**JEFFREY GALION, INC., an Ohio corporation, Defendant.**

**Civ. No. 70–26.**

United States District Court,
E. D. Illinois.

May 5, 1971.

Leon G. Scroggins, Madison, Ill., for plaintiff.

Ray Freeark, Belleville, Ill., for defendant.

## MEMORANDUM AND ORDER

JUERGENS, Chief Judge.

This diversity action seeks recovery for injuries allegedly received due to a defective steering valve on a hydraulically operated ram car manufactured by defendant.

In his amended Count I plaintiff alleges that on February 22, 1968, he was an employee of Peabody Coal Company (Peabody), working in Eagle Mine No. 1 in Shawneetown, Illinois; that defendant sold to Peabody hydraulically operated ram cars, which were in use on and prior to the date of the injury; that on February 22, 1968, plaintiff was engaged in his employment when one of the ram cars went out of control due to a defective steering valve and collided with and broke a high pressure air hose, which struck him, causing serious and permanent injuries; that at the time the defendant sold the hydraulically operated ram cars to Peabody, the same were unreasonably dangerous in that there was a defective steering valve on the ram car in question.

Defendant moves for summary judgment as to Amended Count I, charging that plaintiff was an employee of Peabody; that the injury to plaintiff resulted from a collision of the alleged defective ram car with a high pressure line which then struck the plaintiff, causing the injury for which this suit is brought; that plaintiff has admitted in his deposition that he had gone to work for Peabody as a repairman and electrician at Eagle Mine No. 1 on September 11, 1967, about six months prior to the accident; that on the day in question he had been assigned on the particular ram car which he alleges caused his injury; that when he was injured he was not on the ram car but was standing in an open passageway, waiting for the ram car in question to arrive from another passageway; that as the ram car approached, it struck an air line which broke and flipped into plaintiff, causing his injuries; that the air line is not part of the ram car but is a one inch metal tube which comes into the mine from outside and is anchored at the roof of the mine; that it has been conclusively established through pleadings and depositions that plaintiff's status relative to the allegedly defective product at the time of the occurrence was not as a "user or consumer," but that of a "bystander"; and that in an action based on a defective product in the State of Illinois, a bystander has no standing to sue the manufacturer of a defective product, and plaintiff will, therefore, not qualify

as a party eligible to recover under the theory of strict liability in products.

In Suvada v. White Motor Company, 32 Ill.2d 612, 210 N.E.2d 182, the Supreme Court of Illinois laid to rest the privity defense in actions against manufacturers, sellers, contractors, etc., and held these parties to strict privity-free liability for any injury or damage caused by any unreasonably dangerous products which one or all of them might place in the stream of commerce insofar as users and consumers are concerned. Prior to Suvada, privity was an essential ingredient to liability in a negligence action against a manufacturer.

The Fifth District Appellate Court in Wright v. Massey-Harris, Incorporated, 68 Ill.App.2d 70, 215 N.E.2d 465, a products liability case dealing with an allegedly defective cornpicker, discussed post-Suvada law in Illinois and compared the new products liability provisions with the provisions which existed prior to Suvada, stating:

> "The wisdom of Suvada is well illustrated by the result reached in the case of Murphy v. Cory Pump & Supply Company, 47 Ill.App.2d 382, 197 N.E. 2d 849, relied upon by the defendant. Plaintiff, a seven year old child, lost her leg by falling in front of a power mower with a rotary blade which was being operated by her eleven year old sister. The negligence charged was that the mower was inherently dangerous in that the rotary blade would be likely to injure and maim children and that although the rotary blade appeared to be covered, it lacked a safety screen or bar.

> "The Appellate Court upheld the action of the trial court in allowing a motion for summary judgment in favor of the defendant, giving as its reason that the manufacturer of this mower owed no duty to the plaintiff.

> "*Murphy illustrates a typical result which Suvada seeks to remedy by placing the losses caused by unreasonably dangerous machines or products on those who have created the risk and reaped the profit rather than on an innocent seven year old child.*" (Emphasis supplied.)

Although the Fifth District Appellate Court in Wright did not have before it the factual situation presented in the Murphy case, it nevertheless indicates it would, if presented a similar factual situation in a post-Suvada case, apply the doctrine of Suvada and extend liability to cover the innocent child although the child would under such circumstances be, as the plaintiff might be considered to be in the present action, a mere bystander.

In a case closely analogous to that here presented, the Illinois Supreme Court in Schmidt v. Archer Iron Works, Inc., 44 Ill.2d 401, 256 N.E.2d 6 (1970), did not reach the question as to whether a manufacturer would be liable for a defective product for injuries resulting to an employee while working adjacent to an allegedly defective product. In Schmidt the plaintiff was injured when a metal pin used to secure a concrete pouring chute to a 104-foot-high tower broke, permitting the chute to fall upon and injure the workman. The Court there stated:

> "The narrow issue before us is whether there was sufficient evidence that the defendant furnished the defective pin to justify the jury's verdict."

The Supreme Court found that the evidence was totally insufficient to establish that the defendant was the manufacturer of the defective pin and did not touch upon the question as to whether or not under such circumstances the manufacturer of the defective product would be liable to a worker or bystander.

Strict liability in tort for a defective product has been extended by the Illinois courts to include food and food products, motor vehicles and other products where the defective condition makes them unreasonably dangerous to the user or consumer.

Public policy is the primary factor considered in imposing strict liability on the seller and manufacturer of food in

favor of the injured consumer. Arguments supporting the imposition of strict liability in food cases have been: (1) The public interest in human life and health demands all the protection the law can give against the sale of unwholesome food. Wiedeman v. Keller, 171 Ill. 93, 49 N.E. 210; (2) The manufacturer solicits and invites the use of his product by packaging advertising or otherwise, representing to the public that it is safe and suitable for use. Having thus induced use of the product, the law imposes liability for the damage it causes. Patargias v. Coca-Cola Bottling Co. of Chicago, 332 Ill.App. 117, 74 N.E.2d 162; (3) The losses caused by unwholesome food should be borne by those who have created the risk and reaped the profit by placing the product in the stream of commerce. Wiedeman v. Keller, supra.

As was stated in Suvada, supra, it seems obvious that public interest in human life and health, the invitations and solicitations to purchase the product, and the justice of imposing the liability on the one creating the risk and reaping the profit are present and are as compelling in cases involving motor vehicles and other products where a defective condition makes them unreasonably dangerous to the user as they are in food cases.

In Wright, supra, it was said Suvada seeks to remedy the result reached in Murphy by placing the losses caused by unreasonably dangerous machines or products on those who have created the risk and reaped the profit rather than on an innocent seven-year-old child.

It seems somewhat incongruous to say that a user or consumer of a product has a right of action against the manufacturer of a defective product, but to withhold protection from an innocent bystander who has suffered injuries through no fault of his own, which injuries were caused by the defective product solely because at the time he received his injury he was not using or consuming the product, but was merely standing by innocently minding his own business when he was suddenly injured by another's use of the defective product.

It might be argued that the innocent bystander would under such circumstances have a cause of action against the user and the user in turn could then shift his liability back to the guilty manufacturer. This argument is unsound since a jury, if presented with such a factual situation, could find the user not guilty of negligence and therefore grant to the plaintiff nothing for his injuries. Under these circumstances the guilty manufacturer would go away scot-free, and the plaintiff would be required to suffer the burden of his injuries without recompense. In the situation presented here the injured employee would undoubtedly have a cause of action under the Workmen's Compensation Act of the State of Illinois against the employer, but by virtue of that same act would have no cause of action against the employer. The employer in turn would have no right of action against the manufacturer for the defective product, except to the extent of the Workmen's Compensation claim. Thus, again the manufacturer is permitted to, at least to some degree, escape the burden which he, having reaped the profit, should bear.

An even more compelling reason why the innocent bystander should be protected appears when we view the situation where a purchaser, consumer or user may see fit to purchase an inferior product in order to reduce costs. Under such circumstances if the burden is to be borne by any one, it should be the manufacturer and the less-than-prudent purchaser and user. Certainly it should not be borne by the innocent bystander. Unless the doctrine is extended to encompass the innocent bystander as well as the user and consumer, very incongruous results will obtain.

If, as in food cases and in product liability cases where the user and consumer are concerned, the public policy requires protection, to an even greater measure that same public policy should require protection of the innocent bystander.

▪ In order for a plaintiff to recover under the doctrine of strict liability in tort for a defective product, he must

prove that he was injured by the defendant's defective product, which he or someone else was using. He must also prove that the defect existed at the time the product left the possession of the manufacturer and that his injury was proximately caused by the defective product. Otherwise stated, plaintiff must prove that his injury or damage resulted from a condition of the product; that the condition was an unreasonably dangerous one; and that the condition existed at the time it left the manufacturer's control. If an injured bystander is able to meet these requirements, no logical reason exists why he should not be compensated for his losses.

The Court, having considered the prior Illinois decisions, both in their actual holdings and their obvious implications, and following the reasoning set forth by the Illinois courts in those decisions, finds that an innocent bystander does have a cause of action against a manufacturer under the doctrine of strict liability in tort for a defective product.

For the foregoing reasons, defendant's motion for summary judgment as to Amended Count I will be and the same is hereby denied.