JAMES BARR, Plaintiff-Appellant, *v.* RIVINIUS, INC., Defendant-Appellee.

Third District   No. 75-426

Opinion filed March 15, 1978.

122

BARRY, J., dissenting.

John Morel, of Dunn, Brady, Goebel, Ulbrich, Morel & Jacob, of Bloomington, for appellant.

John E. Cassidy, Jr., of Cassidy, Cassidy & Mueller, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This is a products liability case brought by James Barr for personal injuries allegedly sustained on July 27, 1971, in the course of his employment by the Eaton Asphalt Co. The defendant, Rivinius, Inc., is the manufacturer of the Rivinius Domor Shoulder Spreader which was leased to Eaton.

Prior to the incident, the plaintiff was not operating the machine, but had walked to a point in the roadway approximately 15 to 20 feet in front of it. He was standing facing north away from the spreader observing a truck tailgating its load, as the machine, pushed by a roadgrader, was moving in a northerly direction at a low rate of speed. The right front wheel of the machine struck the plaintiff's leg and pulled it under the

machine, thereby knocking the plaintiff down and running over his leg. As a result, the plaintiff's leg had to be amputated below the knee.

The cause proceeded to trial against Rivinius on count II of the first amended complaint, which alleged at paragraphs 8 and 9 as follows:

"8. That the Defendant, RIVINIUS, INC., a Corporation, manufactured and placed upon the market the product known as the Rivinius Domor shoulder spreader, which reached the consumer in the condition in which it was sold by the Defendant and the Defendant knew or should have known that through foreseeable use as here, that the product was dangerous to an extent beyond that which would be contemplated by the ordinary consumer or user and in particular the Plaintiff in that the shoulder spreader's front wheels were improperly guarded or shielded which defect would not be discoverable by the Plaintiff.

9. That the Plaintiff was unaware of the aforesaid qualities which caused the product to be unreasonably dangerous."

At the close of all the proof, the plaintiff was given leave to file a second amended complaint to conform the pleadings to the proof. The new complaint omitted all reference to the questions of whether the product was dangerous "to an extent beyond that contemplated by * * * the Plaintiff," whether the defect was not "discoverable by the Plaintiff" and whether "the Plaintiff was unaware" of the unreasonably dangerous qualities. Instead it alleged:

"6. That the Defendant, Rivinius, Inc., a Corporation, manufactured and placed upon the market the product known as the Rivinius Domor Shoulder Spreader, which reached the consumer in the condition in which it was sold by the Defendant, which condition was unreasonably dangerous in that the shoulder spreader's front wheels were not guarded. [*sic*].

7. That as a direct and proximate result of the unreasonably dangerous condition of said spreader, the Plaintiff sustained severe and permanent injuries to his right leg * * *."

Thereupon, the defendant was given leave to file an answer to the second amended complaint. This new answer not only denied pertinent allegations, as did the former answer, but it also added an affirmative defense:

"1. That at all times relevant to the occurrence of July 27, 1971 plaintiff was aware of and realized the condition of the shoulder spreader about which he complains.

2. That if, as claimed by plaintiff, the condition of the shoulder spreader was unreasonably dangerous, then that fact was known to and realized by him and he assumed the risk of injury therefrom."

Concerning this affirmative defense, the trial court gave the following two instructions to the jury. Defendant's instruction No. 1A:

"Plaintiff claims he was injured and sustained damages by reason of a condition of defendant's shoulder spreader and that the condition was unreasonably dangerous in the following respect:

That the front wheels were not guarded.

Plaintiff further claims that the foregoing condition was a proximate cause of his injuries.

Defendant denies that the foregoing condition claimed by plaintiff existed, denies that the condition claimed by plaintiff was unreasonably dangerous and denies that any condition of its shoulder spreader was a proximate cause of plaintiff's injuries.

The defendant also sets up the following affirmative defense:

That, if the condition of the shoulder spreader was unreasonably dangerous as claimed by the plaintiff, then that fact was known and realized by the plaintiff and he assumed the risk of injury therefrom.

Defendant further denies that plaintiff was injured or sustained damage to the extent claimed."

Defendant's instruction No. 3A:

"The defendant has raised the affirmative defense that the plaintiff assumed the risk of injury from the unreasonably dangerous condition which the plaintiff contends caused his injury. To prove that defense the defendant has the burden of proving each of the following propositions:

First; That the plaintiff knew the unreasonably dangerous condition existed and realized the possibility of injury therefrom.

Second; That the unreasonably dangerous condition was a proximate cause of plaintiff's injury.

If you decide that each of these propositions has been proved, then your verdict should be for the defendant. If, on the other hand, you decide that either of these propositions has not been proved, then the defendant has not proved the affirmative defense of assumption of risk."

However, the trial court refused to give the plaintiff's instruction No. 19:

"The defendant has raised the affirmative defense that the plaintiff assumed the risk of injury from the unreasonably dangerous condition which the plaintiff contends caused his injury. To prove that defense the defendant has the burden of proving each of the following propositions:

First, that the plaintiff knew of the existence of a condition

which rendered the Rivinius Shoulder Spreader unreasonably dangerous.

Second, the plaintiff appreciated the danger involved in the Rivinius Shoulder Spreader;

Third, that such use of the Rivinius Shoulder Spreader after knowledge of such condition and appreciation of the danger was voluntary and unreasonable;

Fourth, that such condition proximately caused the plaintiff's injury.

If you decide that each of these propositions has been proved, then your verdict should be for the defendant. If, on the other hand, you decide that either of these propositions has not been proved, then the defendant has not proved the affirmative defense of assumption of risk."

The jury returned a verdict for the defendant and against the plaintiff. The circuit court of Peoria County entered judgment on that verdict. The plaintiff now appeals.

On this appeal the plaintiff makes two principal assignments of error. First, the trial court erred in granting leave to the defendant, Rivinius, Inc., to amend its answer at the conclusion of all the evidence and two, the trial court erred in giving the defendant's assumption of risk instructions and declining the one offered by plaintiff.

■■ As can be seen from the instructions proposed by both parties on the theory of assumption of risk and from the pleadings, it is clear the assumption of risk theory assumes the proof of the existence of an unreasonably dangerous condition proximately causing the injury and establishing the liability of defendant except for the plaintiff's knowing assumption of the consequences resulting from the use of the product. Before determining whether the assumption of risk theory was properly pleaded or the jury properly instructed thereon, we must first consider whether the evidence establishes that plaintiff's injury was caused by an unreasonably dangerous condition of the spreader. If not then no issue of assumption of risk can arise.

Before discussing the issue in detail there are several facts which should be noted. In normal operation, the shoulder spreader by itself has no means of locomotion, but must be pushed by a roadgrader. The operator of the roadgrader controls the forward motion of the roadgrader-shoulder spreader unit while the shoulder spreader operator stands on a platform on the shoulder spreader and controls the flow of asphalt. Prior to plaintiff's injury, a conveyor belt on the spreader had broken, which prevented use of the unit. Plaintiff had left his operating platform to assist several trucks in unloading their loads of asphalt onto the highway

directly. The roadgrader-shoulder spreader unit was apparently being moved to a place where repairs could be performed when the plaintiff sustained his injury. From the pictures of the unit which were admitted into evidence, it appears the wheel which struck plaintiff was of a caster type capable of rotating 360 degrees and with a diameter of no more than 18 inches.

Since plaintiff, at the time of his injury, was not using the shoulder spreader, at least not in any traditional sense of the word, it must be determined whether the protection afforded by concepts of strict liability in tort extend to this plaintiff. We believe they do not.

■■ The leading case on the topic of foreseeability in strict liability in tort is *Winnett v. Winnett*, 57 Ill. 2d 7, 310 N.E.2d 1. In *Winnett*, a four-year-old girl was injured when she placed her hand on a moving conveyor belt or screen on a forage wagon located on her grandfather's farm. The girl brought an action against the manufacturer of the forage wagon for those injuries. The case was dismissed by the trial court, but was reversed by the appellate court. In affirming the original disposition by the trial court, the supreme court focused on the concepts of foreseeability of one not using the product, but who was injured by it. In discussing liability of a manufacturer under such circumstances, the court stated:

> "We, however, find this categorization of plaintiffs as users, consumers or innocent bystanders helpful only in a general sense. In the unusual case the application of these labels does not assist resolution of the issues. In our judgment the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseen and only those situations where the product is being used for the purpose for which it was intended or for which it was reasonably foreseeable it may be used. Any other approach to the problem results in making the manufacturer and those in the chain of product distribution virtual insurers of the product, a position rejected by this court in *Suvada. [Suvada v. White Motor Co.* 32 Ill. 2d 612, 210 N.E.2d 182.]" (57 Ill. 2d 7, 11, 310 N.E.2d 1, 4.)

The question then is whether it can be fairly said that the situation and conduct of plaintiff in standing along the highway and the failure of the roadgrader operator to observe plaintiff in the path of the roadgrader was reasonably foreseeable. In resolving this question it is important to define the parameters of foreseeability and the comments of the court in *Winnett* are helpful in this regard.

> "A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. 'In a sense, in retrospect almost nothing is entirely unforeseeable.' [Citation.] Foreseeability means that which it is

*objectively reasonable* to expect, not merely what might conceivably occur." (57 Ill. 2d 7, 12-13, 310 N.E.2d 1, 4-5.)

Under such a standard involving objectivity, we do not think that it was objectively reasonable to expect the manufacturer of the shoulder spreader to foresee the occurrence which resulted in plaintiff's unfortunate injury.

■■ An equally important reason for affirming the judgment is the absence of proximate cause between any condition of defendant's product and the plaintiff's injury. Plaintiff's injury was not proximately caused by any condition which made the shoulder spreader unreasonably dangerous, but rather from the conduct of plaintiff and the operator of the roadgrader.

■■ It is clear that a condition of the product must be the proximate cause of plaintiff's injury. (*Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182.) Whether the case involves negligence or strict liability in tort, the concepts of proximate causation are the same in each. Such a position finds support in the recent IPI instruction on strict liability which provide the identical language in defining proximate cause as does the proximate cause instruction applicable to negligence cases. (Compare IPI Civil No. 400.04 (2d ed. 1977 Supp.) with IPI Civil No. 15.01 (2d ed. 1971).) If the allegedly defective condition of the product does no more than furnish a condition by which the injury is made possible and that condition causes any injury by the subsequent act of a third person, the two are not concurrent and the existence of the defective condition is not the proximate cause of the injury. See *Seith v. Commonwealth Electric Co.*, 241 Ill. 252, 89 N.E. 425; *Felty v. General Telephone Co.*, 47 Ill. App. 3d 427, 362 N.E.2d 43; *Ferguson v. Southwestern Bell Telephone Co.*, 8 Ill. App. 3d 890, 290 N.E.2d 429; *Watson v. Byerly Aviation, Inc.*, 7 Ill. App. 3d 662, 288 N.E.2d 233.

While it is always possible in hindsight to say that conduct such as that of the roadgrader operator could be anticipated, we do not believe that the manufacturer in the exercise of reasonable diligence could or should be expected to anticipate the conduct which is demonstrated by the evidence. The attachment of the shoulder spreader to the front of the roadgrader does not in any way obstruct the vision of the roadgrader operator looking forward, as is revealed by pictures of the unit admitted into evidence. By the plaintiff's own testimony, he was 15 to 20 feet in front of the entire unit prior to being struck. The speed of the unit when it struck plaintiff was one mile per hour. Simple calculations reveal that a time period of 10 to 13 seconds elapsed before plaintiff was struck, during which a mere glance forward by the operator would have revealed plaintiff's presence and allowed the unit to be stopped. The injury plaintiff received is indeed lamentable, but liability should not be

imposed upon the manufacturer since it could not, in the exercise of reasonable diligence, be expected to anticipate the failure of the roadgrader operator to observe his path of progress in the manner revealed by the evidence. We believe the evidence establishes beyond dispute that the injury was caused either by the conduct of the plaintiff or the roadgrader operator in failing to keep a proper lookout. That the wheel was caused to collide with the defendant, knock him over and run over his leg was not the result of any failure to guard or shield the wheel. We believe that the evidence so overwhelmingly demonstrates that the proximate cause of the injury was not any defective condition of the shoulder spreader that the judgment in favor of the defendant was proper as a matter of law.

■■ There is one aspect of this case arising out of the somewhat unusual factual setting which we think should be noted. While the judgment below should be affirmed for the reasons we have indicated, we question whether a defendant may assert assumption of the risk as a defense against a person occupying the posture of this plaintiff. It seems to us that part of the difficulty in drafting a correct instruction on assumption of the risk defense applicable to the evidence stemmed in part from the fact that the plaintiff was not using the product he claims was defective. Neither the plaintiff's proffered instruction nor the new instructions on assumption of the risk (IPI Civil No. 400.03 (2d ed. 1977 Supp.)) fit the factual pattern, since both of those instructions contain the term "use." Assumption of risk in strict liability is grounded upon the simultaneous existence of knowledge and use of a product which contains an unreasonably dangerous defect. Use denotes an immediate means of controlling the object claimed to contain an unreasonably dangerous defect. The law reasons that if an individual has the power to stop using a product which he knows contains an unreasonably dangerous condition but fails to do so, he is not entitled to the protection afforded by concepts of strict liability. Hence, it would seem that if the two, use and knowledge, fail to exist in conjunction with one another, the defense of assumption of the risk is not available. The facts here do not demonstrate use and indeed it is difficult to visualize a fact pattern which would admit of application of the doctrine of assumption of risk to a bystander. Hence, we do not believe assumption of the risk was available as a defense, but for the reasons we have previously stated, we affirm the judgment of the trial court.

Judgment affirmed.

STENGEL, J., concurs.

Mr. JUSTICE BARRY, dissenting:

The majority suggests that Illinois bystanders have no right of action against a manufacturer in strict products liability. Even though I believe the plaintiff is more than a mere bystander, as a statement of law the majority's conclusion is less than accurate. Although some writers suggest that recent Illinois Supreme Court decisions have reversed the trend of expanding the strict liability of manufacturers (M. Pope and D. Pope, *Design Defect Cases: The Present State of Illinois Products Liability Law*, 8 J. Mar. J. Prac. & Proc. 351 (1975)), I believe the existing law of Illinois would allow the defendant-manufacturer to be held strictly liable for injuries to the plaintiff if the jury so found. As a result, the majority is wrongly taking the case from the jury.

In *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 311 N.E.2d 128, the Illinois Supreme Court, while admitting that Indiana law governed the case, recognized that the law was the same in both jurisdictions. Our supreme court held a defendant manufacturer responsible to a bystander where its product, which was being transported on a fork lift truck by a purchaser's employee on the purchaser's premises, fell and struck the plaintiff, also a purchaser's employee, because the wheel of the fork lift went into a hole in the floor. The supreme court's rationale was that whether the alleged misuse on the part of the purchaser was reasonably foreseeable by the manufacturer was a question for the jury. Therefore, the circuit court's judgments were affirmed.

Very recently, the Illinois Supreme Court has allowed the recovery by an automobile passenger against the manufacturer of the automobile for injuries received in an automobile collision. The manufacturer was held strictly liable because the manufacturer has a duty to exercise reasonable care in the design and manufacture of its product, "bearing in mind that the intended and actual use of automobiles results in collisions." *Buehler v. Whalen* (1977), 70 Ill. 2d 51, 61, 374 N.E.2d 460, 464.

The majority opinion relies heavily on *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1. In short, that case held that the presence of a four-year-old child in the vicinity of the machinery was not reasonably foreseeable to the manufacturer. The *Winnett* case turns not on whether the plaintiff was a bystander, but whether the plaintiff was a foreseeable plaintiff to the manufacturer at the time the instrumentality was designed and produced. Here, however, the plaintiff was an employee working on the road. The plaintiff had been operating the shoulder spreader before it broke down. However, after the conveyor belt was broken, the plaintiff was to "walk" the machine to the next intersection to be repaired. This procedure was not to occur until 12 or 13 trucks had dumped their loads of stone and cleared a path for the shoulder spreader and grader. While

waiting for the trucks to dump their loads, the injury occurred. In effect, the plaintiff continued to have responsibility for the machine and was to direct its propulsion to the next intersection, about a quarter of a mile down the road. Therefore, I believe the majority wrongly stuffs the plaintiff into the pigeonhole they conveniently label "bystander."

Even if we assume the plaintiff was a "bystander" or nonuser, because of the nature of the work this machine was designed to do, it is reasonable that the manufacturer should have foreseen the presence of other employees in the vicinity of the machine. Furthermore, because this machine is designed to be propelled the manufacturer should have reasonably foreseen that the machine would collide with something or someone in its operation. In short the plaintiff was a foreseeable plaintiff to the manufacturer, and *Winnett* is not controlling.

The most recent additions to the Illinois Pattern Jury Instructions also suggest that a cause of action against a manufacturer in strict, product liability is available to a bystander. IPI Civil No. 400.01(1) (2d ed. 1977 Supp.) states that a plaintiff may claim that he was injured while he was using the instrumentality *or as a result of the use of the instrumentality*. The second circumstance implies that a plaintiff may claim to be injured as a result of the use of the product, even though the plaintiff was not using the product. Otherwise the differentiation between the two is illogical and useless.

Allowing bystanders a cause of action in strict products liability is a logical extension of the principles set forth in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, which formed the foundation to erect the tort of products liability in the State of Illinois. In deciding *Suvada*, the Illinois Supreme Court relied on three basic concepts, each an expression of public policy. Because of the public interest in preserving human life and protecting health, because of the invitations and solicitations to purchase products, and because of the justice of imposing the loss on the one creating the risk and reaping the profit, the responsibility and the liability should be placed upon the party best able to shoulder it; the manufacturer. The underlying philosophy is no less applicable where a nonuser, nonpurchaser bystander is injured and where the manufacturer should have foreseen that bystanders would be in the vicinity of the instrumentality when that instrumentality was being used.

The District Court for the Eastern District of Illinois, relying on the reasoning in *Suvada*, absent an Illinois Supreme Court opinion directly deciding the right of a bystander to sue a manufacturer, denied the manufacturer's motion for summary judgment. (*White v. Jeffrey Galion, Inc.* (E.D. Ill. 1971), 326 F. Supp. 751.) In *White*, the plaintiff, a mine employee, was standing in a passageway and was injured when a ram car,

owned by his employer, struck an air line which in turn struck the plaintiff. The plaintiff sued the manufacturer of the ram car because the ram car struck the air line as a result of a defective steering valve. The court in *White*, reasoned as follows:

"It seems somewhat incongruous to say that a user or consumer of a product has a right of action against the manufacturer of a defective product, but to withhold protection from an innocent bystander who has suffered injuries through no fault of his own, which injuries were caused by the defective product solely because at the time he received his injury he was not using or consuming the product, but was merely standing by innocently minding his own business when he was suddenly injured by another's use of the defective product.

It might be argued that the innocent bystander would under such circumstances have a cause of action against the user and the user in turn could then shift his liability back to the guilty manufacturer. This argument is unsound since a jury, if presented with such a factual situation, could find the user not guilty of negligence and therefore grant to the plaintiff nothing for his injuries. Under these circumstances the guilty manufacturer would go away scot-free, and the plaintiff would be required to suffer the burden of his injuries without recompense. In the situation presented here the injured employee would undoubtedly have a cause of action under the Workmen's Compensation Act of the State of Illinois against the employer, but by virtue of that same act would have no cause of action against the employer. The employer in turn would have no right of action against the manufacturer for the defective product, except to the extent of the Workmen's Compensation claim. Thus, again the manufacturer is permitted to, at least to some degree, escape the burden which he, having reaped the profit, should bear.

An even more compelling reason why the innocent bystander should be protected appears when we view the situation where a purchaser, consumer or user may see fit to purchase an inferior product in order to reduce costs. Under such circumstances if the burden is to be borne by any one, it should be the manufacturer and the less-than-prudent purchaser and user. Certainly it should not be borne by the innocent bystander. Unless the doctrine is extended to encompass the innocent bystander as well as the user and consumer, very incongruous results will obtain.

If, as in food cases and in product liability cases where the user and consumer are concerned, the public policy requires

protection, to an even greater measure that same public policy should require protection of the innocent bystander." *White v. Jeffrey Galion, Inc.* (E.D. Ill. 1971), 326 F. Supp. 751, 754.

This reason equally applies to the case at bar. And the Illinois Supreme Court has recognized a remedy in the manufacturer over against the employer of the injured plaintiff. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1978), 70 Ill. 2d 1, 374 N.E.2d 437). Since the manufacturer has the ability to shift some of the responsibility to the employer, there is even less reason to deny an employee a right of action against the manufacturer of the product causing injury.

In addition to denying bystanders a right of action in strict products liability, the majority states that assumption of the risk may not be asserted as an affirmative defense against a non-user of the product. To support this proposition, the majority relies on IPI Civil No. 400.03 (2d ed. 1977 Supp.). Although the 400 series of IPI instructions were published after the date of the trial, those instructions merely restate the law as it existed at the time of the trial. IPI Civil No. 400.03 (2d ed. 1977 Supp.) states that a defendant asserting the affirmative defense of assumption of risk must prove that the plaintiff understood and appreciated the risk of injury from the condition of the product and proceeded or continued to use the product. This reasoning by the majority ignores the comment to IPI Civil No. 400.03 (2d ed. 1977 Supp.). In the comment it is pointed out that the fact that a user of the product assumes the risk will not operate as a defense in an action for injuries to a bystander who has not been proven to have assumed the risk. This principle is derived from *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 311 N.E.2d 128, wherein it was stated that the purchaser's assumption of risk was not imputable to the plaintiff, purchaser's employee.

Of course the majority would be correct in stating that assumption of risk may not be asserted against this type of defendant if they are also correct in saying that this type of defendant, a bystander, has no cause of action in strict products liability. However, *Lewis* and the comment to IPI Civil No. 400.03 (2d ed. 1977 Supp.) imply that a bystander may assume the risk and such may be asserted as an affirmative defense by a defendant manufacturer. Therefore, the majority's reasoning on both points must be incorrect.

A bystander-plaintiff may assume the risk if he knew of the condition which he alleges made the product unreasonable, if the plaintiff understood and appreciated the risk of injury from the condition and voluntarily remained in or proceeded into the area in which the product was being used and if the known condition was a proximate cause of the plaintiff's injuries. Therefore, whether the plaintiff assumed the risk should have been left to the jury.

But to decide the issue, the jury must have been properly instructed. I believe in this case the jury was not properly instructed as to the issue of assumption of risk. In giving defendant's instruction No. 3A, the court failed to inform the jury that, to assume the risk, the plaintiff must voluntarily proceed in the face of a known and appreciated dangerous condition, which condition proximately caused the plaintiff's injury.

The majority never gets to this point, having removed the function of the jury from this case in spite of jury questions, such as whether there was a dangerous condition, whether the dangerous condition proximately caused the plaintiff's injury and whether the manufacturer could reasonably foresee an injury to this type of plaintiff. (See *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 311 N.E.2d 128.) The Illinois courts have been criticized for reversing the trend in products liability decisions by deciding, as a matter of law, issues which are arguably questions of fact for the jury. M. Pope and D. Pope, *Design Defect Cases: The Present State of Illinois Products Liability*, 8 J. Mar. J. Prac. & Proc. 351 (1975).

The majority has improperly concluded as a matter of law that this fact situation presents a pure vehicle-pedestrian collision, not a products liability case. Ignored are the facts that the shoulder spreader was moving at only one mile per hour and that the tire of the spreader pulled the plaintiff's leg under the machine because of the coefficient of friction. A jury of reasonable persons could find that a guard or bumper would have prevented the injury.

Accordingly, I would reverse this judgment of the Circuit Court of Peoria County and remand the cause for a redetermination before a properly instructed jury.