**Richard R. ASHMAN and Dorothy M. Ashman, Plaintiffs,**

v.

**SK & F LAB CO., A SUBSIDIARY OF SMITHKLINE BECKMAN CORPORATION, Defendant.**

**No. 87 C 6717.**

United States District Court, N.D. Illinois, E.D.

Dec. 23, 1988.

---

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

This case is properly before the court pursuant to diversity jurisdiction. The court assumes, as did the parties, that Illinois law applies to plaintiffs' negligence and strict liability claims. Defendant has moved for summary judgment.[1] Summary judgment is appropriate if the court concludes "that based on the evidence upon which the plaintiff intends to rely at trial, no reasonable jury could return a verdict for the plaintiff." *Weit v. Continental Illinois National Bank & Trust Co. of Chicago,* 641 F.2d 457, 461 (7th Cir.1981),

cert. denied, 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982). The existence of a factual dispute does not necessarily negate a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). There must be a genuine issue concerning a material fact. *Id.* at 248, 106 S.Ct. at 2510; *Wilson v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 841 F.2d 1347, 1352 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 1, 101 L.Ed.2d 953 (1988). A genuine issue exists when the evidence is such that a jury could reasonably return a verdict for the nonmovant. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Jakubiec v. Cities Service Co.,* 844 F.2d 470, 473 (7th Cir.1988). However, the nonmovant must make a showing sufficient to establish an essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The facts, construed as described above, are as follows.

Tagamet is a prescription drug designed to reduce stomach acidity. It is manufactured by defendant, SK & F Lab Co. In 1984, Richard Ashman's physician, Dr. Cesar Secoquian, prescribed Tagamet for Mr. Ashman. In 1985, Dr. Secoquian prescribed Ativan for Mr. Ashman. Ativan is a sleeping pill not manufactured by defendant. The Ativan was co-administered with the Tagamet and there were no side effects. Over two years later, in April 1986, and while Mr. Ashman was still taking the Tagamet, Dr. Secoquian prescribed the drug Halcion in place of Ativan. Halcion is a sleeping pill and is not manufactured by defendant.

---

1. Plaintiffs' motion to amend complaint and      motion to clarify are granted.

Prior to the Halcion prescription, Dr. Secoquian consulted both the package insert for Halcion and the 1986 version of the Physician's Desk Reference ("PDR"). Both of the consulted sources discuss a potential interaction between Halcion and Tagamet.[2] Nonetheless, Dr. Secoquian decided to prescribe Halcion for Mr. Ashman, even though there were other sleeping pills available. The Tagamet label does not specifically mention the interactive propensities of the drug with Halcion. While Dr. Secoquian read the Tagamet label on previous occasions, he did not read it when making the decision whether to prescribe Halcion for Mr. Ashman.

During the evening of May 3, 1986, Mr. Ashman ingested Tagamet. About four hours later, he took the Halcion. The next morning, Mr. Ashman took an overdose of Ativan tablets which he had left over from the old prescription. Mr. Ashman was then taken to the hospital in an unconscious state. Dr. Secoquian was not sure what had caused Mr. Ashman's condition but suspected cerebral hemorrhage and decided to do a lumbar puncture to confirm. Before the procedure, Mr. Ashman regained consciousness and was in a coherent state. Nonetheless, Dr. Secoquian decided to go ahead with the lumbar puncture.

As a result of alleged negligence in the performance of the lumbar puncture, Mr. Ashman was partially paralyzed.[3] Plaintiffs claim that the interaction between the Tagamet and the Halcion created the state of mind which led to confusion and the overdose which in turn set in motion the chain of events which ultimately resulted in paralysis.[4] There is an issue over whether the interaction actually occurred. However, for present purposes, this court assumes it did occur.

The Ashmans filed a negligence claim against Dr. Secoquian which was subsequently settled. The present negligence and strict liability claims are brought by Mr. and Mrs. Ashman against the manufacturer of Tagamet, SK & F Lab Co. In Counts II and V of their complaint, plaintiffs allege that defendant failed to provide an adequate warning of the interactive propensities of the two drugs and is therefore strictly liable for the injuries sustained and the loss of companionship and consortium. In Counts III and VI, plaintiffs allege that defendant negligently distributed Tagamet by failing to provide consumers and physicians with an adequate warning of the interactive propensities of the two drugs.

Defendant moves for summary judgment claiming that there is no issue of material fact and that judgment should be awarded in its favor because (1) defendant is relieved of liability under the learned intermediary doctrine; (2) the drug interaction did not cause the state of mind which led to the overdose; and (3) the negligence involved in the lumbar puncture which led to plaintiff's partial paralysis was not foreseeable.

■ Defendant argues that the injuries sustained as a result of the malpractice were not a foreseeable result of the alleged failure to adequately warn. In response, plaintiffs argue that such an injury was foreseeable and that even if it was not,

---

**2.** The PDR entry for Halcion states:

Pharmacokinetic interactions [i.e., interactions without a clinically significant side effect] of benzodiazepines with other drugs have been reported. For example, the co-administration of Triazolam [Halcion] and Cimetidine [Tagamet] in a controlled clinical trial in normal subjects resulted in a reduction of Triazolam clearance and an increase in the elimination half-life from 2.2 to 3.7 hours. The plasma concentration of Triazolam approximately doubled when co-administered with Cimetidine. However, this did not result in any drug accumulation.

Although it is stated that there is no clinically significant side effect, the warning is sufficient

because it states the interaction that was known and because the alleged harmful effect of Mr. Ashman's use of the two drugs is the decrease in elimination that is stated in the PDR. Mr. Ashman claims that the Halcion had a stronger effect than it would otherwise have had because the concurrent use of Tagamet delayed the elimination of Halcion from his system.

**3.** The lumbar puncture was performed after Mr. Ashman had been given coumadin which the parties state should not have been done.

**4.** Plaintiffs do not argue there are compensable injuries that occurred prior to the lumbar puncture.

foreseeability is not an issue in strict liability claims. Contrary to plaintiffs' assertion, foreseeability is an element in strict liability as well as negligence actions. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill.2d 507, 111 Ill.Dec. 944, 950, 513 N.E.2d 387, 393 (1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988).

> Whether the case involved negligence or strict liability in tort, the concepts of proximate causation are the same in each.... If the allegedly defective condition of the product does no more than furnish a condition by which the injury is made possible and that condition causes any injury by the subsequent act of a third person, the two are not concurrent and the existence of the defective condition is not the proximate cause of the injury.

*Barr v. Rivinius, Inc.*, 58 Ill.App.3d 121, 15 Ill.Dec. 591, 595, 373 N.E.2d 1063, 1067 (1978).

Foreseeability is a question for the court to decide when the facts demonstrate that the plaintiff would never be entitled to recover. *Kirk*, 111 Ill.Dec. at 950, 513 N.E.2d at 393; *Winnett v. Winnett*, 57 Ill.2d 7, 310 N.E.2d 1, 5 (1974); *Barr*, 15 Ill.Dec. at 595, 373 N.E.2d at 1067. The significance of foreseeability for both negligence and strict liability is that it limits the extension of liability to those injuries proximately caused by the defendant's conduct. W. Prosser & W. Keeton, *The Law of Torts* 560 (5th ed. 1984). A defendant is not liable for results which cannot fairly be regarded as normal incidents of the risk which its conduct has created. *Id.* at 309.

■ Assuming that defendant breached its duty to adequately warn, the injuries for which plaintiffs seek relief are not a reasonably foreseeable result of this breach. To hold defendant liable would require several leaps. First, there was Dr. Secoquian's decision to prescribe the two drugs when he had knowledge of interactive propensities. Second, there was the alleged abnormal interaction causing the confusion in Mr. Ashman. Third, there was the overdose of Ativan. Fourth, there

was the mistaken assumption that Mr. Ashman was suffering from cerebral hemorrhage. And, finally, after Mr. Ashman regained consciousness, there was the negligent and unnecessary lumbar puncture.

Negligence of another not reasonably foreseeable by the drug manufacturer may relieve it of liability. *Dunn v. Lederle Laboratories*, 121 Mich.App. 73, 328 N.W. 2d 576, 582 (1982). Assuming the co-administration of the drugs and their alleged effect were foreseeable, the injuries sustained from a lumbar puncture, unnecessarily and negligently performed, were not. *Cf. Kirk*, 111 Ill.Dec. at 951, 513 N.E.2d at 394. Even if the coma was foreseeable, the unnecessary lumbar puncture was not. The introduction of the third party's negligence broke any causal chain that otherwise might have existed. As such, defendant is not liable for the injuries sustained from the negligent operation.

■ The learned intermediary doctrine also can relieve a drug manufacturer of liability for adverse effects of its drugs. The doctrine applies to both strict liability claims and negligence claims. *Leesley v. West*, 165 Ill.App.3d 135, 116 Ill.Dec. 638, 640, 518 N.E.2d 758, 760, *leave to appeal denied*, 119 Ill.2d 558, 119 Ill.Dec. 387, 522 N.E.2d 1246 (1988). An adequately informed physician acts as learned intermediary between the patient and the drug manufacturer, thus breaking the chain of liability. *Kirk*, 111 Ill.Dec. at 950, 513 N.E.2d at 393; *Hurley v. Lederle Laboratories*, 851 F.2d 1536, 1541 (5th Cir.1988).

In their brief, plaintiffs concede Dr. Secoquian was a learned intermediary. However, they argue that the doctrine does not relieve defendant of liability because it failed to include a specific warning on the Tagamet label concerning the interactive propensities of the drug with Halcion. The warning which plaintiffs argue should have been included is essentially the same as that provided in the 1986 PDR for Halcion. Thus, plaintiffs argue that the learned intermediary doctrine does not break the chain of liability even where a learned intermediary, knowing of the dangerous pro-

pensities of the drug, prescribes it nonetheless.

This reasoning is contrary to the learned intermediary doctrine. Under the learned intermediary doctrine, "[c]ourts have consistently held that a drug manufacturer is entitled to summary judgment where the prescribing physician is aware of the risks associated with a drug." *Wooten v. Johnson & Johnson Products, Inc.*, 635 F.Supp. 799, 803 (N.D.Ill.1986). A "manufacturer will be liable to the ultimate user of its drugs or vaccine product unless it provided that user with an adequate warning *or* an informed professional judgment actually intervened in the application of the product to that user." *Hurley*, 851 F.2d at 1542.

Plaintiffs try to create an issue by alleging that Dr. Secoquian did not know of the interactive propensities of the drugs. However, plaintiffs' allegation is not supported by the record. Standing alone, mere allegations do not establish a genuine issue of material fact. *Hall v. Printing & Graphic Arts Union*, 696 F.2d 494, 500 (7th Cir.1982); *Wooten*, 635 F.Supp. at 803 n. 5. The interactive propensities of Tagamet and Halcion are listed on the Halcion label and in the PDR. The PDR is an accepted method by which drug manufacturers communicate product information to the medical profession. *Kirk*, 111 Ill.Dec. at 949, 513 N.E.2d at 392; *Mahr v. G.D. Searle & Co.*, 72 Ill.App.3d 540, 28 Ill.Dec. 624, 640, 390 N.E.2d 1214, 1230 (1979). Mr. Ashman was already on Tagamet when Dr. Secoquian decided to put him on Halcion. As Dr. Secoquian has testified, when making his decision he consulted both the Halcion label and the PDR.[5] The PDR Halcion entry indicates that there is an interactive effect when Tagamet and Halcion are co-administered. The Halcion label also contains a similar warning of its interactive propensities with Tagamet.

The information provided by plaintiffs' own expert, Dr. James O'Donnell, supports the conclusion that Dr. Secoquian was adequately informed.[6] Dr. O'Donnell stated that, based on the information provided both in the Halcion literature and the PDR, the interaction which occurred in Mr. Ashman was predictable. The learned intermediary doctrine applies where a physician is alerted to the dangerous propensities of a particular drug and nonetheless decides to prescribe it.

In *Mulder v. Parke Davis & Co.*, the Supreme Court of Minnesota affirmed the dismissal of a wrongful death claim against a drug manufacturer where the prescribing physician was aware of the risks. 288 Minn. 332, 181 N.W.2d 882, 885 (1970). It held that even though the drug manufacturer breached its duty to warn, "the manufacturer is not liable if the doctor was fully aware of the facts which were the subject of the warning." *Id.*

Finally, plaintiffs argue that the learned intermediary doctrine is not applicable here because defendant failed to include a warning on its Tagamet label concerning the interactive propensities of Tagamet and Halcion. They argue this silence misled Dr. Secoquian. Once again, in order to survive summary judgment, plaintiffs attempt to create an issue without support in the record. Plaintiffs offer no evidence that Dr. Secoquian consulted the Tagamet label at the time he prescribed the Halcion nor any evidence that his prior reading of the Tagamet label affected his decision to prescribe Halcion. In any event, Dr. Secoquian could not have been misled since he also read the Halcion PDR and the Halcion label.

Defendant is not liable for the injuries sustained as a result of the purportedly negligent lumbar puncture because (1) they are not a foreseeable result of the purported failure to warn and (2) Dr. Secoquian was an informed learned intermediary. Ei-

---

5. Dr. Secoquian's denial in his answer to plaintiffs' related suit against him does not create a genuine factual dispute where his deposition testimony in this case is to the contrary, the denial is ambiguous, and Dr. Secoquian did not sign the state court pleading.

6. Defendant contests the qualification of Dr. O'Donnell as an expert able to render an opinion as to the adequacy of the warnings. A person with a doctorate in pharmacy can be qualified as a medical expert. *See Crisostomo v. Stanley*, 857 F.2d 1146, 1153 n. 18 (7th Cir.1988).

ther ground is a sufficient basis for granting summary judgment on all counts.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' motion to amend is granted.

(2) Plaintiffs' motion to clarify plaintiffs' response to defendant's statement of uncontested facts is granted.

(3) The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiffs dismissing the cause of action with prejudice.