(No. 70830.

JOHN M. WEST, Adm'r of the Estate of Willie D. West, Deceased, Appellant, v. DEERE & COMPANY, a Corporation, Appellee.

*Opinion filed October 31, 1991.*

FREEMAN, J., joined by CLARK, J., dissenting.

Robert A. Clifford, Keith A. Hebeisen, Robert P. Sheridan and Patricia J. Carlson, of Robert A. Clifford & Associates, of Chicago, for appellant.

Peter J. Magnani, of Chicago, for appellee.

Lawrence R. Kream, of Kostantacos, Traum, Reuterfors & McWilliams, P.C., of Rockford, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Lord, Bissell & Brook, of Chicago (Hugh C. Griffin and Sandra K. Macauley, of counsel), for *amicus curiae* Product Liability Advisory Council.

JUSTICE HEIPLE delivered the opinion of the court:

This action arose out of a collision on May 31, 1986. The driver of a step van was killed when his vehicle col-

lided with a field cultivator being towed by a tractor. A wrongful death action was filed on behalf of the decedent in the circuit court of Kane County against six defendants. We are concerned here only with defendant Deere and Company (Deere).

Plaintiff's fifth-amended complaint alleged that Deere designed, manufactured and sold the cultivator which was defective. Plaintiff advanced two theories of recovery, strict liability and negligence, asserting Deere's liability because the cultivator's extension arms were of excessive length, the cultivator lacked a safety mechanism to enable the user to fold the extension arms into a position safe for highway traffic and warning devices to alert oncoming vehicles that their traffic lane was blocked by the cultivator and, finally, because "the width of the cultivator exceeded the minimum width of highways required by Illinois law."[1]

---

[1]The above language is taken from plaintiff's fifth-amended complaint. The relevant statutory language states:

"All State highways shall be constructed of sufficient widths to meet the requirements of the reasonably expected traffic thereon. The widths of travel ways shall be not less than 18 feet [9 feet per lane]." (Ill. Rev. Stat. 1985, ch. 121, par. 4—401.)

Of additional interest is the statutory language contained in the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 1—100 et seq.) regarding the width of vehicles. The statute provides, in pertinent part:

"Width of Vehicles. (a) Except as otherwise provided in this Section or this Code, the total outside width of any vehicle or load thereon shall not exceed 8 feet.

(b) Except *** the following vehicles may exceed the 8 feet limitation ***:

***

(2) Implements of husbandry being transported on another vehicle." (Ill. Rev. Stat. 1985, ch. 95½, par. 15—102.)

The width of the subject lane is approximately 15 feet 5½ inches. The width of the cultivator in transport mode is 16 feet.

Deere filed a motion for summary judgment asserting that the cultivator was not defective and did no more than furnish a condition that made the accident possible. Following arguments on Deere's motion, the trial court granted summary judgment in favor of defendant Deere. The court stated that virtually all products were capable of producing an injury when put to certain uses, particularly when the injury resulted from a collision with a product, and found that the alleged defective condition did no more than make the injury possible. The appellate court affirmed, with one justice dissenting. It agreed with the trial court's rationale and concluded that the cultivator was not unreasonably dangerous and that the trial court had properly entered summary judgment in Deere's favor. (201 Ill. App. 3d 891.) We granted leave to appeal (134 Ill. 2d R. 315) and affirm.

Plaintiff argues that because the accident occurred, and because a portion of the cultivator extended into the oncoming traffic lane, the cultivator must have been defective and unreasonably dangerous. Both the trial and appellate courts correctly predicated their decisions on the general rule in Illinois that the fact that an injury has occurred, in and of itself, is insufficient to show the existence of a product defect. (*Kokoyachuk v. Aeroquip Corp.* (1988), 172 Ill. App. 3d 432.) Illinois courts have consistently recognized that "injuries must derive from a distinct defect in the product, a defect which subjects those exposed to the product to an *unreasonable* risk of harm." (Emphasis in original.) (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211.) Plaintiff in the instant case has failed to make the requisite showing that the cultivator subjected those exposed to it to an unreasonable risk of harm.

The facts in the record establish that the decedent was driving a van eastbound, while Martin Bohne was driving a tractor westbound, towing a cultivator at a slow rate of speed from one farm to another on a two-lane highway.

The cultivator in its transport mode was 16 feet wide. At the accident location on a highway overpass with a reduced-width shoulder, approximately 6½ inches of the cultivator was extended into the oncoming traffic lane. It is undisputed that Boehne, who was towing the cultivator, was familiar with the route he was taking and was aware that there were alternative routes which would not necessitate a crossing of the overpass. Boehne knew that a portion of the cultivator would extend into the oncoming lane when crossing the overpass. Additionally, Boehne testified that as the step van approached him on the overpass, it hit a dip in the road and swerved over the center line into his westbound lane. Had West's stepvan not crossed the center line and had it stayed at least 6½ inches right of the centerline, no collision would have occurred.

The facts also show that the two amber warning lights on top of the tractor cab were flashing and faced oncoming traffic. The cultivator was also equipped with an amber reflector facing oncoming traffic on its left-hand front extremity. Finally, the record reveals that Michael Probst and James Meredith, owners of the cultivator, had attached a harrow to the machine in 1986. The attached harrow altered the cultivator so that its extremities would not fold flat, and the harrow extended beyond the cultivator when it was folded for transport. There was no evidence presented which would indicate that the cultivator was not visible to oncoming traffic.

The lower courts correctly determined that the cultivator did nothing more than furnish a condition which made the injury possible. The instant case is factually analogous to *Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, relied upon by the trial and appellate courts. In *Barr*, the plaintiff was severely injured when he was struck by a shoulder spreader being pushed by a road grader. The court pointed out that the proximate cause of plaintiff's injury was the conduct of the road operator and the plaintiff, rather than

a condition which made the spreader unreasonably dangerous. In finding that plaintiff's injury was not proximately caused by any unreasonably dangerous condition of defendant's product, the *Barr* court stated:

> "If the allegedly defective condition of the product does no more than furnish a condition by which the injury is made possible and that condition causes any injury by the subsequent act of a third person, the two are not concurrent and the existence of the defective condition is not the proximate cause of the injury." (*Barr*, 58 Ill. App. 3d at 127.)

Additionally, in *Hunt*, this court concluded:

> "Virtually any product is capable of producing injury when put to certain uses or misuses. This is particularly true when injury results from a collision with the product. Injuries are not compensable in products liability if they derive merely from those inherent properties of a product which are obvious to all who come in contact with the product." (*Hunt*, 74 Ill. 2d at 211.)

In the instant case, the accident was the result of the conduct of the decedent West, who was driving the stepvan, and Boehne, who was pulling the cultivator with a tractor. The width of the cultivator was merely a condition present at the occurrence. The accident happened because of a unique concatenation of events. That is, Boehne pulled a cultivator across an overpass where it extended 6½ inches over the centerline at a time and place where West's stepvan swerved across the centerline and into its path.

On defendant's motion for summary judgment, a plaintiff is not required to establish his case as he would at trial, but he must present some factual basis that would arguably entitle him to a judgment. (*Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813.) In the instant case, plaintiff did not provide the court with sufficient facts to support a reasonable inference that any allegedly defective or unreasonably dangerous condition in the cultivator was a cause of his injuries.

Accordingly, we affirm the decisions of the trial and appellate courts granting summary judgment in favor of defendant Deere and Company.

*Affirmed.*

JUSTICE FREEMAN, dissenting:

I believe that a question of material fact exists as to whether the field cultivator being towed by the tractor on the highway was in an unreasonably dangerous condition. Therefore, I believe that summary judgment was improperly granted in favor of Deere & Company (Deere).

The record shows that the highway overpass had only two lanes, one for eastbound and one for westbound traffic. The width of the overpass measured approximately 30 feet, 1 inch, from curb to curb. The cultivator in its transport mode was 16 feet wide. The cultivator traveling in the eastbound lane thus would extend into the westbound lane approximately 6½ inches. The parties do not dispute that the cultivator necessarily extended a distance of 6½ inches into the oncoming lane of traffic in which plaintiff's decedent was traveling.

The evidence of the size of the cultivator and the overpass, coupled with the evidence that plaintiff's decedent and the defendant driver traveled the overpass at the same time in different directions is sufficient to raise a question of material fact which should have precluded summary judgment. Whether the width of the cultivator in its transport mode created an unreasonably dangerous condition and proximately caused plaintiff's decedent's injuries and death are questions of fact properly left to the jury.

The majority relies on *Hunt v. Blasius* (1978), 74 Ill. 2d 203, for the proposition that a plaintiff cannot recover in strict liability for injuries which result from a collision with a product whose inherent properties "are obvious to all who come in contact with the product." (*Hunt*, 74 Ill. 2d

at 211.) The facts in *Hunt*, however, are not comparable to the facts in the instant case. In *Hunt*, the occupants of an automobile which left the highway and collided with an exit sign post brought an action in negligence and strict liability against the company that designed, constructed, and installed the sign post. The court held that summary judgment in favor of the defendant was properly granted. With regard to the strict liability counts, the court held that even though an alternative design of the post might have been preferable, nevertheless, the plaintiff failed to allege a defect in the post itself which affected its intended or actual use. Further, the court stated that the risks which existed for the collision with the post were "the same risks which attend all collisions between motorists and stationary objects which align the highway." *Hunt*, 74 Ill. 2d at 212.

Unlike *Hunt*, the facts of the instant case do not involve a motorist striking a stationary object which lies off the highway. Rather, this case involves two motorists colliding where the wide load of one of the vehicles extended into the other lane of oncoming traffic. Further, and most significantly, unlike in *Hunt*, where there was no defect alleged in the sign post itself, in the instant case, there are alleged defects in the cultivator itself—its excessive width while in the transport mode and the lack of adequate warnings—which are alleged to have created an unreasonably dangerous condition and proximately caused decedent's injuries. The presence of these alleged defects in the object distinguishes the facts of this case from *Hunt*. Accordingly, the holding of *Hunt* does not govern the facts of the instant case.

The majority also relies on the appellate court case of *Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, to support its conclusion that "the width of the cultivator was merely a condition present at the occurrence" and did not proximately cause the decedent's injuries. *Barr*, however,

does not support the majority's conclusion. *Barr* involved a products liability action against the manufacturer of a road shoulder spreader machine. During the course of his employment for a construction company, the plaintiff was standing in a roadway when the operator of a road grader with the shoulder spreader attached moved toward plaintiff. The wheel of the spreader struck plaintiff, injuring him. The plaintiff alleged that the machine was unreasonably dangerous in that the front wheels were not guarded.

After a full trial, the jury in *Barr* returned a verdict in favor of the defendant and against the plaintiff. The appellate court affirmed. The appellate court, citing a foreseeability test set forth in *Winnett v. Winnett* (1974), 57 Ill. 2d 7, stated that it was not objectively reasonable to expect the manufacturer of the shoulder spreader to foresee the occurrence which resulted in the plaintiff's injury. (*Barr*, 58 Ill. App. 3d at 126-27, citing *Winnett*, 57 Ill. 2d at 12-13.) In addition, the court held that, as to proximate causation, the jury's verdict was supported by the evidence, which overwhelmingly showed that the plaintiff's injury was not proximately caused by any condition which made the spreader unreasonably dangerous, but by the conduct of the plaintiff and the operator of the road grader. (*Barr*, 58 Ill. App. 3d at 127.) The court noted, among other things, that the plaintiff had his back to the machine at the time of the accident. Further, the attachment of the shoulder spreader to the grader did not obstruct the vision of the operator of the grader. The evidence indicated that had the operator of the road grader merely glanced forward before the accident, he would have been aware of the plaintiff's presence and the accident could have been avoided. *Barr*, 58 Ill. App. 3d at 127-28.

Significantly, the decision in *Barr* was rendered after a full trial, while here, the trial court granted summary judgment. Further, the facts in *Barr* are not similar to the

facts in the instant case. Here, the cultivator was being transported in its transport mode upon a highway. The plaintiff's decedent's vehicle was traveling in an adjacent, oncoming lane of traffic. That the cultivator extended into the plaintiff's decedent's lane of traffic on an overpass which measured only approximately 30 feet wide raises material questions, unlike in *Barr*, as to whether the accident could have been avoided by conduct of plaintiff's decedent.

This court held in *Buehler v. Whalen* (1977), 70 Ill. 2d 51, that a manufacturer has a duty to use reasonable care in the design and manufacture of its product, bearing in mind the intended and actual uses of the product. (*Buehler*, 70 Ill. 2d at 60-61.) There is evidence of record in the instant case to support a finding that the transporting of the cultivator on the highway overpass would be a use foreseeable to Deere. For instance, G. Dwight Hunter, an agricultural engineer and a retired employee of Deere, testified in a deposition that Deere's engineers were aware that the cultivator would be transported on a roadway on which the lanes of traffic sometimes measured less than 16 feet wide, while the width of the cultivator in its transport mode was 16 feet.

The question of whether it was foreseeable to Deere that the cultivator would be transported upon a highway whose lanes had a width less than that of the cultivator was properly one for the jury. As this court stated in *Winnett v. Winnett* (1974), 57 Ill. 2d 7, questions of foreseeability, like questions of whether a product is defective or unreasonably dangerous, generally are for a jury to resolve. (*Winnett*, 57 Ill. 2d at 13.) "Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur." (Emphasis in original.) (*Winnett*, 57 Ill. 2d at 12-13.) The jury in the instant case should determine whether, as a result of such conditions, it was foreseeable that a collision between the culti-

vator and a vehicle, such as plaintiff's decedent's, traveling in a lane adjacent to the cultivator, would occur. See *Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211.

In addition to the question of foreseeability, the question of proximate causation should be left to the jury. In order to recover in strict liability, the plaintiff must show that the allegedly dangerous condition of the product was a proximate cause of his injury. (See *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104.) In the case before us, the evidence showing that the excessive width of the cultivator resulted in the cultivator's extending into the oncoming lane of traffic on a highway overpass is sufficient to raise a question of fact as to whether the cultivator created an unreasonably dangerous condition which proximately caused plaintiff's decedent's injuries and death.

I agree with the majority's statement of the law that the fact that an injury has occurred, in and of itself, is not sufficient to show the existence of a product defect. (*Kokoyachuk v. Aeroquip Corp.* (1988), 172 Ill. App. 3d 432.) Further, I agree with the majority that in order to recover in strict liability, a plaintiff must show that his injuries "derive from a distinct defect in the product, a defect which subjects those exposed to the product to an *unreasonable* risk of harm." (Emphasis in original.) (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211.) I believe, however, that whether the excessive width of the cultivator and the alleged lack of sufficient warnings on the machine exposed plaintiff's decedent to an unreasonable risk of harm are questions for the jury, not properly decided at the summary judgment stage.

JUSTICE CLARK joins in this dissent.