145 N.J. Super. 415 (1976)
367 A.2d 1216
PETER ILICH, PLAINTIFF,
v.
JOHN E. SMITH SONS CO., INC., ET AL., DEFENDANTS, AND JOHN E. SMITH SONS CO., INC. ET ALS. AND LUCAS L. LORENZ, INC., THIRD-PARTY PLAINTIFFS,
v.
VIC SMOLEN, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 10, 1976.
*416 Mr. Bruce A. Tritsch for plaintiff (Messrs. Feinberg, Feinberg & Tritsch, attorneys).
Mr. John L. McDermott for defendant John E. Smith Sons Co., Inc. (Messrs. McDermott & McGee, attorneys).
Mr. Rocco L. D'Ambrosio for defendant Lucas L. Lorenz, Inc. (Messrs. O'Donnell, Leary & D'Ambrosio, attorneys).
Mr. George J. Mandle, Jr. for defendant Vic Smolen.
DREIER, J.C.C., temporarily assigned.
In this products liability action plaintiff was injured while operating an allegedly defective meat grinding machine. The accident occurred on July 23, 1973 when, as a result of his hand becoming *417 caught in the machine, plaintiff suffered an amputation of a portion of his arm. Specifically, plaintiff alleges that a defect in the machine was the absence of a "on-off" switch located in a position which would have enabled the operator to stop the machine without reaching any farther than an arm's length. It is conceded that the machine was not factory-wired and that the switches must have been wired to the machine on location. At the time of the accident the "on-off" switch for the machine was located on the wall behind the machine, out of the reach of plaintiff.
Third-party-plaintiffs, the manufacturer and distributor of the machine, allege that third-party defendant, Smolen (hereafter "defendant"), was engaged by plaintiff's employer in 1958 or 1959 to perform wiring work at the latter's premises and at that time wired the machine in question.
In his motion for summary judgment defendant, in addition to denying that he ever wired the specific machine, argues that the complaint of the manufacturer and distributor is barred by N.J.S.A. 2A:14-1.1 which provides:
No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought." [L. 1967, c. 59 § 1, eff. May 18, 1967]
The Supreme Court in Rosenberg v. North Bergen, 61 N.J. 190 (1972), explained that this statute was a legislative response to several recent developments in the law; namely, the growth of the "discovery" rule as enunciated in *418 Fernandi v. Strully, 35 N.J. 434 (1961), and the demise of the "completed and accepted" rule in Totten v. Gruzen, 52 N.J. 202 (1968). A third factor, alluded to in O'Connor v. Altus, 67 N.J. 106 (1975), was the need for a limitation upon Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965), which had held a builder-developer strictly liable in tort for injuries to a third party. Having thus construed the legislative intent to limit the exposure of those involved in improvements to real property, the court determined that the statute is to be read broadly, "applying to all who can, by a sensible reading of the words of the act, be brought within its ambit." Rosenberg, supra, 61 N.J. at 198.
This is the background against which this court must evaluate the movant's claim that he is within the class protected by the statute, and thus is entitled to summary judgment.
It is uncontroverted that defendant's work on the premises entailed the wiring of the premises for conversion from a theater to a butcher shop. In view of the law as stated above, defendant's function in this capacity constitutes an "improvment to real property." But the alleged negligence of defendant bears little relation to an improvement to real property, even if "real property" is read as encompassing fixtures. Defendant's alleged actions related solely and specifically to his wiring of a particular piece of equipment which cannot even by application of New Jersey's peculiar "institutional doctrine" be denominated a fixture. See Fahmie v. Nyman, 70 N.J. Super. 313 (App. Div. 1961).
Accordingly, this court is confronted with the novel question of whether the general classification of defendant's actions, viz., wiring the premises, necessitates a finding that he is protected by the statute for all services performed by him while he was so engaged.
This court finds that the function of the defendant in wiring the machine does not fall within the intendment of the statute. As noted above, there has been no suggestion that the machine in question is a fixture, nor can this court, *419 under the facts presented, find that it is one. Fahmie v. Nyman, supra. For purposes of the movant's exposure to potential liability for negligence, no practical distinction should be drawn between his negligent wiring of machine and a negligent repair of a chair or table by a carpenter who also happens to be working on a wall of the building. Both involve personalty. Accordingly defendant's motion under the statute is denied.
The court finds, however, that other grounds militate for a summary judgment in favor of defendant. Defendant, by affidavit denies wiring the machine in question. Defendants and third-party plaintiffs have provided no additional facts which controvert movant's denial, other than ambiguous statements in a deposition of plaintiff's employer (the individual who originally hired movant to do the electrical work for the building).[1]
More importantly, a request by the court that counsel produce some fact tending to show that defendant had any knowledge of the type of machine he wired, yielded nothing. Assuming arguendo, that defendant did wire the machine, there can be no showing of negligence on the part of defendant, *420 absent a showing that he had any knowledge of the potential danger of the machine to its operator. Such knowledge would have been one factor in determining whether there was a duty on defendant's part to insure the safety of ultimate operators of the machine. However, no such showing has been made here.
A second factor is whether there was a relationship between the parties upon which the law would impose such a duty of care. It has not been argued, nor will this court assume, that every electrician has a duty to unforeseen eventual machine operators to inquire as to the function of a machine before it is wired by him. However, since defendant's knowledge of the function of this machine has not been shown, this court need not reach the issue of a general duty owing to plaintiff by defendant. Suffice it to say that in order to render the defendant liable, there must be found a breach of duty, which duty if observed, would have averted plaintiff's injuries. Fortugno Realty Co. v. Schiavone-Bonomo Corp., 39 N.J. 382, 393 (1963). See also, Wytupeck v. Camden, 25 N.J. 450 (1958).
The motion for summary judgment is granted.
NOTES
[1] Now what about the electricity, the electrical parts of the machine, who did that?
A. We got that electrician, Smoln [sic]
* * * * * * * *
Q. Now, the electrician, this fellow Smoln, he had nothing to do with Lorenz or the people that made the machine. Is that right?
A. I can't tell you, I don't know. He is the electrician for the building.
Q. For the building where you were located?
A. Yes. I don't know exactly for machines or not, no.
* * * * * * * *
Q. Whoever it was that put the electrical work in, where was the switch for the machine placed, do you remember?
A. Behind the machine on the wall.
Q. Behind the machine on the wall?
A. Yes.
Q. Was there any reason for placing it there as compared to placing it somewhere else? Did you have any thought in mind?
A. That's the electrician, I don't know." (Emphasis added)