PHYLLIS J. BEALS, Adm'r of the Estate of James F. Beals, Deceased, Plaintiff-Appellant, v. SUPERIOR WELDING COMPANY *et al.*, Defendants-Appellees (Burdick Plumbing and Heating Company *et al.*, Defendants).

Fourth District   No. 4—94—0417

Argued May 23, 1995.—Opinion filed July 20, 1995.

James Walker (argued), of James Walker, Ltd., of Bloomington, for appellant.

Michael J. Kehart (argued) and James E. Peckert, both of Kehart, Shafter, Hughes & Webber, P.C., of Decatur, for appellee Superior Welding Company.

Mark S. Grotefeld and Susan M. Griesgraber (argued), both of Robins, Kaplan, Miller & Ciresi, of Chicago, and Alan R. Miller, of Robins, Kaplan, Miller & Ciresi, of Boston, Massachusetts, for appellees Industrial Risk Insurers and Factory Mutual Engineering Corporation.

Evan H. Johnson (argued), of Erickson, Davis, Murphy, Johnson, Griffith & Walsh, Ltd., of Decatur, for appellee Lumbermen's Mutual Casualty Company.

Robert E. Gillespie and William P. Hardy (argued), both of Hinshaw & Culbertson, of Springfield, for appellee Dow Chemical Company.

John Barr, of Barr & Barr, of Decatur, for appellee INC Expert Technical Services.

Harold F. Tenney (argued) and Carl J. Tenney, both of Tenney & Tenney, of Decatur, for appellee Hall, Schwartz & Ahlenius.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff filed a complaint generally sounding in negligence against Superior Welding Company (Superior), with amended counts against various defendants, for the death of plaintiff's decedent during a work-related accident at A.E. Staley Manufacturing Company (Staley). All defendants, except Superior, obtained dismissal by summary judgment; Superior was dismissed pursuant to sections 2—619(a)(9) and (a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9), (a)(5) (West 1992)), and a Rule 304(a) finding was entered (Official Reports Advance Sheet No. 26 (December 12, 1993), R. 304(a), eff. February 1, 1994). Plaintiff appeals arguing the trial court erred in dismissing Superior and entering summary judgment for the other defendants. We affirm in part, reverse in part, and remand.

On May 15, 1990, plaintiff's decedent and another employee were working inside industrial reactor tank No. 1 at Staley's facilities in Decatur when toxic liquid propylene oxide entered the tank through pipes connecting it to reactor tank No. 2, which was then being evacuated. The other employee escaped but decedent was fatally overcome by the fumes. We will discuss the facts only as necessary for resolution of the issues respecting each defendant.

## I. SUPERIOR WELDING COMPANY

■ Superior initially contends that dismissal may be supported by *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, based on its allegation that it did not "design" the reactor tank in question. The trial court found there was not sufficient evidentiary material before it to make a ruling based on *Hunt*. Since Superior has not seen fit to present more than a bare contention, without analysis or factual support showing how *Hunt* supports its motion to dismiss, the issue is waived for purposes of review. See *In re Marriage of Wade* (1987), 158 Ill. App. 3d 255, 270, 511 N.E.2d 156, 167.

Plaintiff alleges the trial court erred in granting Superior's section 2—619 motion to dismiss because disputed questions of fact exist regarding (1) Superior's corporate existence at the time of manufacture, and (2) whether the repose provisions of section 13—214(b) of the Code (735 ILCS 5/13—214(b) (West 1992)) bar the cause of action.

The trial court allowed Superior's motion to dismiss pursuant to section 2—619(9) of the Code finding that the evidentiary materials relied on by Superior show it "was not a legally existing entity at the time of the manufacture or design or installation of the tank." A "Superior Welding Company" existed in Decatur in 1960 at the time reactor tank No. 1 was manufactured and installed, and a "Superior Welding Company" existed in Decatur at the time of suit, but Superior alleges it is not the same entity.

Part of the evidentiary materials submitted by Superior in support of its motion to dismiss was the affidavit of Superior's president, Bruce Hampton, who identified reactor tank No. 1 as having been manufactured by "Superior Welding." He stated:

"I am aware that serial number 6061 indicates that the tank was manufactured in the year 1960, and was the sixty-first job the Company did during the calendar year 1960. Additionally, I have examined drawings for that particular tank, and I know from the serial number and from the drawings that this tank was produced by Superior Welding during the calendar year 1960, and was also installed that year at the A.E. Staley Manufacturing Company."

Also included was the affidavit of Superior's vice-president and general manager, Ken Stolley, who asserted he "has been employed at the facilities of Superior Welding Company in Decatur, Illinois, for approximately 18 years," that he reviewed engineering drawings and specification sheets normally and customarily kept by Superior as part of its business records, and that Superior did not "design" the reactor tank manufactured in 1960.

Superior also submitted its answers to interrogatories propounded by plaintiff and various incorporation and dissolution documents.

The evidence indicates that in 1946, an entity called "Superior Welding Company" was incorporated as an Illinois corporation, with its registered office in Decatur, Illinois, with one of its shareholders and president listed as Robert W. Kopetz. In January 1966, "Superior Welding Company" (Illinois Superior) amended its articles of incorporation to change its name to "Decatur Liquidating Co.," with its president listed as Robert W. Kopetz. According to Superior's answers to interrogatories, "Superior Welding Company" became a wholly owned subsidiary of an entity identified as Keystone Industries on December 27, 1965, and was incorporated in Delaware as

"Superior Welding Company" (Delaware Superior). The Illinois corporation was dissolved in December 1966. Delaware Superior apparently continued manufacturing operations at the same locale as Illinois Superior based on Ken Stolley's affidavit stating that he had worked for "Superior" in Decatur since 1973, and a letter written by R. W. Kopetz in January 1970 on the letterhead of "Superior Welding Company" in Decatur which was sent to Staley quoting the price for another reactor of the same type as manufactured in 1960. According to Superior's answers to interrogatories, which are far from clear, Delaware Superior dissolved in June 1981 and another company moved to Decatur from Warrensburg in July 1981, hired certain of Delaware Superior's employees, and changed its name to "Superior Welding Company." It is unclear whether this involved an acquisition of assets or merger. Thereafter, in January 1987, certain unidentified assets of this last "Superior Welding Company" were purchased by another corporation "and included in a company utilizing the name of Superior Tank, Inc.," which also changed its name to "Superior Welding Company," the entity that does business as the defendant Superior herein.

■ While no valid cause of action which accrues after dissolution may be brought against a dissolved corporation (*Blankenship v. Demmler Manufacturing Co.* (1980), 89 Ill. App. 3d 569, 574, 411 N.E.2d 1153, 1156):

> "it is sufficient in order to treat one corporation as the alter ego of another where there is such a unity of interest and ownership that the individuality of one corporation has ceased, and where the observance of the fiction of separate existence would under the circumstances sanction a fraud by promoting injustice." (*Edwards v. Chicago & Northwestern Ry. Co.* (1967), 79 Ill. App. 2d 48, 52, 223 N.E.2d 163, 165.)

If upon hearing a section 2—619 motion, "a material and genuine disputed question of fact is raised the court *** shall so deny it if the action is one in which a party is entitled to a trial by jury." (735 ILCS 5/2—619(c) (West 1992); see *Daiwa Bank, Limited v. La Salle National Trust, N.A.* (1992), 229 Ill. App. 3d 366, 384, 593 N.E.2d 105, 116.) Given the apparent linkage between the Illinois and Delaware corporations, the gaps and inconsistencies in the evidence regarding the continuing existence of an entity bearing Superior's name, location, and admittedly at least some of its assets, and the admission by Superior's president that it manufactured the reactor tank in 1960, we find there exist genuine questions of material fact as to whether the 1960 reactor tank was manufactured by the same entity as the defendant named in this lawsuit.

■ The circuit court also based the dismissal of Superior on its finding the reactor tank was part of the real estate and the cause was barred by the repose provisions of section 13—214(b) of the Code, which provides:

> "No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission." (735 ILCS 5/13—214(b) (West 1992).)

In support of its dismissal pursuant to the statute, Superior contends the reactor tank constituted a permanent improvement to real estate made prior to 1969 (a date it was apparently moved to a new location within Staley's facility) because it was bolted to the floor and an exterior wall was enlarged to facilitate removal following the fatality. However, in order to come within the repose provisions of the statute, "a manufacturer must perform some role related to the construction site beyond provision of standard products generally available to the public and not custom designed for the project." (*People v. Asbestospray Corp.* (1993), 247 Ill. App. 3d 258, 266, 616 N.E.2d 652, 657-58.) In all cases in which an item of machinery housed within a structure has been found to be "an improvement to real property" within the meaning of section 13—214(b), some construction of a structure of which the machinery became a part occurred at the time of the machinery's installation. (See *Cross v. Ainsworth Seed Co.* (1990), 199 Ill. App. 3d 910, 923, 557 N.E.2d 906, 914 (belt conveyor system was installed when the sorting building was erected and the conveyor was an integral and essential part of the sorting building's purpose); *Hilliard v. Lummus Co.* (7th Cir. 1987), 834 F.2d 1352, 1355 (conveyor installed along with construction of the building); *Witham v. Whiting Corp.* (7th Cir. 1992), 975 F.2d 1342, 1347 (a crane was custom-built to fit the construction site specifications for a steel plant); *Cates v. Hunter Engineering Co.* (1990), 205 Ill. App. 3d 587, 589, 563 N.E.2d 1239, 1240 (defendant designed, built, and assisted in the installation of the cold rolling mill at newly constructed aluminum sheet mill).) In this case, Superior has produced no evidence showing any construction of a structure housing the reactor tank.

■ In *St. Louis v. Rockwell Graphic Systems, Inc.* (1992), 153 Ill. 2d 1, 605 N.E.2d 555, the supreme court examined the question of whether a manufacturer of a printing press which was installed in a building undergoing expansion was protected by the repose provisions of section 13—214 of the Code. The supreme court viewed the

case as raising two issues: (1) whether the printing press was an improvement to real property, and (2) if so, whether the company primarily responsible for its design and manufacture fell within the scope of section 13—214(b). (*St. Louis*, 153 Ill. 2d at 3, 605 N.E.2d at 556.) Because the court found the record insufficient to determine whether the press was an improvement to real property, it did not address the second issue. The court examined the relationship of fixtures and the phrase "improvement to real property" and concluded they were not synonymous:

> "A fixture is often thought of as a former chattel which, while retaining its separate physical identity, is so connected with the [realty] that a disinterested observer would consider it a part thereof. A common example of such a fixture is a furnace. An improvement, on the other hand, after being installed, may not have an identity separate from the overall system or building in which it is located." (*St. Louis*, 153 Ill. 2d at 4, 605 N.E.2d at 556.)

The court then listed factors for determining what constitutes an improvement to real property, including: whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced. *St. Louis*, 153 Ill. 2d at 4-5, 605 N.E.2d at 556.

The record in the instant case lacks any of the facts considered critical by the *St. Louis* court. The tank at issue here was apparently moved to a new location within Staley nine years following its original installation in 1960 and sat on steel supports bolted to the floor. There is no evidence of any construction undertaken to integrate the reactor tank as part of any overall system, either in 1960 or 1969. We find insufficient evidence of record to support the trial court's conclusion that the reactor tank constituted an improvement to real property as contemplated by section 13—214(b) and the order of dismissal as to Superior is reversed and remanded.

## II. LUMBERMEN'S MUTUAL CASUALTY COMPANY

Plaintiff filed an amended count X against Lumbermen's Mutual Casualty Company (Lumbermen's) alleging it had inspected reactor tanks Nos. 1 and 2 after piping was installed connecting the two tanks and had negligently failed to report to Staley that toxic fumes evacuated from reactor No. 2 could enter reactor No. 1. Lumbermen's motion for summary judgment appended the affidavit of Pamela K. Petersen, its claims representative, asserting (1) she had investigated the records which disclosed no inspection had been made since 1984 (a date other evidence indicated was prior to connection of the two

reactors in 1987), and (2) Lumbermen's had been an insurer of Staley from October 1986 through April 1, 1990, although not at the time of decedent's death on May 15, 1990.

■ The circuit court held that as a matter of law Lumbermen's was at all times alleged in the complaint either an insurer of Staley or a service organization retained to provide safety services for the benefit of Staley employees and therefore had immunity under section 5(a) of the Workers' Compensation Act (Act) (820 ILCS 305/5 (West 1992)). Section 5(a) of the Act provides:

> "No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee ***, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." 820 ILCS 305/5(a) (West 1992).

See also *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 382, 329 N.E.2d 1, 8 (statute grants immunity to a safety service organization retained by employer).

Rather than directly challenging the entry of summary judgment, plaintiff's argument focuses on discovery violations allegedly perpetrated by Lumbermen's which effectively rendered any consideration of the Act premature and precluded entry of summary judgment. Lumbermen's claims that, due to statutory immunity, the existence of any alleged violations is irrelevant.

In December 1991, plaintiff served interrogatories upon Lumbermen's requesting the dates of any inspections Lumbermen's had performed on Staley premises. In January 1993, following plaintiff's motion to default for failure to submit signed interrogatories, Lumbermen's responded that a search of the records did not reveal the information requested but that plaintiff would be promptly notified of any information located. Plaintiff was not notified of any information relating to inspections until January 1994 (following the court's order closing discovery as of December 15, 1993), when Lumbermen's filed its motion for summary judgment with the attached affidavit stating that the records indicated no inspections had been made since 1984.

At the hearing on the motion for summary judgment, plaintiff presented motions relating to Lumbermen's failure to disclose the 1984 inspection, and a request to depose Pamela K. Petersen and examine the records relied on, all of which were denied. Plaintiff argues that pursuant to *Tipsord v. Unarco Industries, Inc.* (1989), 188 Ill.

App. 3d 895, 899-900, 544 N.E.2d 1198, 1201, she was entitled to examine the records of the party asserting by affidavit the absence of reference in the records to subject matter requested in order to satisfy the "facts admissible in evidence" requirement of Supreme Court Rule 191 (145 Ill. 2d R. 191). Lumbermen's argues that even if it had conducted inspections between April 1 and May 15, 1990, a period when it was not an insurer, it was entitled to immunity under section 5(a) of the Act as a service organization providing safety service.

■ Based on the record, we find the trial court lacked sufficient facts to determine whether Lumbermen's had immunity under section 5(a) of the Act. Since the affidavit appended to the motion for summary judgment averred that corporate records indicated no inspection had occurred since 1984 (and plaintiff was not permitted to examine those records to verify this assertion in violation of *Tipsord*), there would, of course, be no evidence of record that any inspection which might have been made was undertaken because Staley had *retained* Lumbermen's to do so during a period it was not an insurer of Staley. Lumbermen's might have made a gratuitous inspection for reasons of its own. The question of Lumbermen's potential tort liability or any duty owed the plaintiff on the theory Lumbermen's performed inspections as a volunteer is not before this court and we express no opinion on this issue. Due to the violation of *Tipsord*, plaintiff was denied discovery of relevant evidence she requested. Therefore, the circuit court erred in considering Petersen's affidavit after denying plaintiff's request to depose her and review the records relied on. Summary judgment for Lumbermen's is reversed.

### III. DOW CHEMICAL COMPANY

Plaintiff's count XII alleged that propylene oxide sold to Staley by Dow Chemical Company (Dow) was unreasonably dangerous because it contained insufficient odorant to alert persons to its presence and afforded decedent insufficient time to exit the tank before he was overcome. Dow's manual for the safe handling of propylene oxide recommended that any eight-hour exposure be limited to 20 parts per million, and since the odor threshold was 200 parts per million, "odor is not an adequate warning to prevent overexposure."

Decedent's co-worker in the tank testified that they smelled fumes of propylene oxide at virtually the same time as liquid propylene oxide began to enter the tank. The odor was so strong the co-worker felt he was suffocating as he attempted to leave the tank. Dow's expert witness, D. M. Ksionda, acknowledged that fumes would have

preceded the liquid into the tank, but the reports indicated that levels would have risen from zero to amounts detectable by smell in a fraction of a second. The expert also testified that inhalation of propylene oxide at undetectable levels created chronic health risks from long-term exposure, and would not have disabled decedent or prevented his escape from the tank. In granting summary judgment for Dow, the trial court found plaintiff failed to present any evidentiary materials "that propylene oxide was unreasonably dangerous because it contained insufficient odor to alert persons to its presence and the lack of odor was a proximate cause of the death of [decedent]."

While plaintiff is not required to prove her case at summary judgment, she is under a duty to present a *bona fide* issue of material fact which would arguably entitle her to judgment. (*West v. Deere & Co.* (1991), 145 Ill. 2d 177, 182, 582 N.E.2d 685, 687.) The mere fact that an injury has occurred, in and of itself, is insufficient to show proximate cause. See *West*, 145 Ill. 2d at 180, 582 N.E.2d at 686.

■ Plaintiff presented no facts or expert testimony to support her theory that the lack of a stronger odorant was the proximate cause of death. Dow's expert testified that inhalation of undetectable amounts of propylene oxide would produce chronic rather than acute effects, and would not have interfered with the ability to escape. Moreover, the testimony of both the expert and the co-worker indicated that detectable levels of propylene oxide were reached at virtually the same time as the chemical entered the tank. Plaintiff's theory is based on speculation which is insufficient to support a showing of proximate cause (*Geelan v. City of Kankakee* (1992), 239 Ill. App. 3d 528, 530, 605 N.E.2d 1015, 1016) and contrary to the undisputed facts that detectable levels were reached virtually simultaneous with exposure. We affirm the entry of summary judgment for Dow.

## IV. HALL, SCHWARTZ & AHLENIUS

Plaintiff's amended count V alleged that a partnership or succession of partnerships of the current professional engineering firm of Hall, Schwartz & Ahlenius (HSA) negligently designed the lines, valves, and controls connecting reactor tank No. 1 with reactor tank No. 2 during 1984, which negligence was a proximate cause of decedent's death.

In 1968, Hall and Schwartz entered into a partnership called Hall-Schwartz & Associates, which conducted business until Hall retired in December 1977 and the partnership was dissolved. The 1978 dissolution agreement provided for division and buyout by Schwartz of Hall's share of partnership funds and property and allowed Schwartz to commence business as a proprietorship using the former partnership name and location.

Schwartz maintained his sole practice as a consulting engineer until January 1, 1989, when Schwartz and Ahlenius formed the partnership of HSA and conducted business at the same location until Schwartz's death in November 1990, when that partnership was dissolved. In 1984, during the period when Schwartz maintained his sole practice (from 1978 to 1989), the acts or omissions alleged in the instant lawsuit occurred.

■ Plaintiff contends that liquidation is the defining event for dissolution of a partnership and questions of fact exist as to whether the second partnership of HSA continued the former partnership formed by Hall and Schwartz. These allegations are based on (1) Schwartz' continuation of business at the same location under the partnership name; (2) the inclusion on Schwartz' letterhead of the name "William H. Hall, Deceased"; and (3) Schwartz' indemnity of Hall for use of the partnership name. Plaintiff also contends that the agreement between Schwartz and Ahlenius continued the alleged partnership maintained by Schwartz alone. Plaintiff cites section 41 of the Uniform Partnership Act (Partnership Act), which provides:

> "(1) When any new partner is admitted into an existing partnership, *** if the business is continued without liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the partnership so continuing the business.
>
> (2) When all but one partner retire and assign *** their rights in partnership property to the remaining partner, who continues the business without liquidation of partnership affairs, either alone or with others, creditors of the dissolved partnership are also creditors of the person or partnership so continuing the business." 805 ILCS 205/41(1), (2) (West 1992).

■ Plaintiff presents no authority to support her claim that the partnership of Hall and Schwartz was not "liquidated" within the meaning of section 41. The term "liquidation" is not defined in the Partnership Act, but it appears to be used interchangeably with the term "winding up" of partnership affairs referenced in sections 29 and 37 of the Partnership Act. (805 ILCS 205/29, 37 (West 1992).) In *Ellerby v. Spiezer* (1985), 138 Ill. App. 3d 77, 79, 485 N.E.2d 413, 415, the plaintiff filed a complaint for an accounting following the dissolution of her law partnership. The court noted that "among the affairs of the partnership requiring winding up were the pending cases the partnership had agreed to handle on a contingent fee basis," which fees were "assets of the partnership to be distributed in accordance with the provisions of the [Partnership Act]." *Ellerby*, 138 Ill. App. 3d at 81, 485 N.E.2d at 416.

Plaintiff has failed to allege any requisite provisions the dissolution agreement executed by Hall and Schwartz omitted or to identify any actions which should have been taken but were not for purposes of liquidating or winding up their partnership in 1978. Schwartz purchased Hall's interest in the firm, notified clients and the public of the dissolution, acknowledged the completion of all projects and receipt of all accounts receivable, and agreed not to transact any business on behalf of the former partnership when he commenced business as a proprietorship. Under these facts, nothing more was required to wind up or liquidate the partnership. Therefore, as plaintiff has presented no disputed questions of material fact, summary judgment for HSA is affirmed.

## V. FACTORY MUTUAL ENGINEERING CORPORATION

In September 1991, plaintiff added a count IX to her original complaint alleging that Factory Mutual Engineering Corporation (FMEC) was negligent in its inspection of the evacuation system for the two reactor tanks at Staley. FMEC filed a motion for summary judgment with attached exhibits, asserting that FMEC was a member of the "Factory Mutual System," composed of separate legal entities including Factory Mutual Engineering Association (FMEA) and three insurance companies which insure against risk for property damage. FMEC averred that (1) it was engaged in the business of leasing or owning property used by members of Factory Mutual System, (2) none of its employees had ever inspected the Staley facilities, (3) FMEA did conduct inspections for members of Factory Mutual System, and (4) FMEA had inspected Staley facilities at the request of one of the member insurance companies. FMEC also claimed that even if it were held accountable for the actions of FMEA, it held immunity pursuant to section 5(a) of the Act as a service organization providing safety service, advice or recommendations.

At the hearing on FMEC's motion for summary judgment, plaintiff filed a motion to amend the complaint to allege FMEC and FMEA were partners and, in essence, FMEC was vicariously liable for the acts or omissions of FMEA. Citing *Kennedy v. King* (1993), 252 Ill. App. 3d 52, 57, 623 N.E.2d 955, 958, and *Weidner v. Carle Foundation Hospital* (1987), 159 Ill. App. 3d 710, 712, 512 N.E.2d 824, 825, the trial court denied the motion to amend on the basis that an amendment attempting to impose liability upon a different theory, such as partnership or vicarious liability, does not relate back.

Plaintiff has failed to include the denial of her motion to amend in the notice of appeal and it is deemed waived for purposes of review. (See Official Reports Advance Sheet No. 26 (December 22, 1993), R. 303(b)(2), eff. February 1, 1994.) Since the issues raised on appeal

relate to negligent inspections by FMEA, a party not named in the complaint, the trial court did not err in finding that FMEC was entitled to summary judgment because it committed no wrongful act. That summary judgment is affirmed.

## VI. INDUSTRIAL RISK INSURERS

Plaintiff's amended count VIII alleged that Industrial Risk Insurers (Industrial) had negligently inspected the piping and controls for the evacuation of reactor tanks Nos. 1 and 2. Industrial answered interrogatories served on it by plaintiff and provided detailed information regarding policy numbers and coverage dates of insurance issued for Staley facilities as well as the dates of inspections made. Those answers indicated that Industrial had insured Staley's Decatur property from June 1979 through March 1, 1991, and had conducted numerous loss-prevention inspections from 1982 through 1991. Plaintiff made no requests for documents, depositions, or additional interrogatories through the close of the discovery period in December 1993.

In January 1994, Industrial filed its motion for summary judgment attaching (1) the affidavit of Mr. Tuttle, its vice-president, averring that Industrial had provided property insurance for Staley at the time of the occurrence and in years prior and had conducted loss-prevention surveys for underwriting purposes; (2) copies of its answers to interrogatories; and (3) a copy of the insurance policy covering the period of the accident. Plaintiff requested and was denied the opportunity to depose Tuttle because the discovery period had closed in December 1993. Plaintiff then moved to strike Tuttle's affidavit on the basis that the documents relied on were not attached and plaintiff had been denied an opportunity to review them as required by *Tipsord*. In denying plaintiff's motion to strike and granting Industrial's motion for summary judgment, the trial court found plaintiff had ample opportunity to conduct discovery and, since the evidence indicated Industrial was the insurer of decedent's employer at all times stated in the complaint, Industrial had immunity under section 5(a) of the Act.

Unlike the factual situation in Lumbermen's, where that defendant failed to supply an answer to an interrogatory relating to inspections until the filing of its motion for summary judgment, plaintiff had 18 months before discovery closed to request documentation of the inspections conducted and the insurer status admitted in the sworn interrogatories or to depose witnesses but failed to do so. Moreover, the rule in *Tipsord* requires that a party have an opportunity to review records relied on when an affiant asserts that the requested

information does not exist. Here, Industrial's affidavit attached copies of the documents relied on—the sworn interrogatories and the current insurance policy—and fully complied with Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)). Those documents establish that Industrial was a property loss insurer of Staley before and at the time of the occurrence; as such it had immunity for any inspections conducted pursuant to section 5(a) of the Act and *Mier* (28 Ill. App. 3d at 384, 329 N.E.2d at 10). Summary judgment for Industrial is affirmed.

## VII. CONCLUSION

The section 2—619 dismissal of Superior and summary judgment for Lumbermen's are reversed and cause remanded; the grant of summary judgment for all other defendants is affirmed.

Affirmed in part; reversed in part and remanded.

KNECHT, P.J., and GREEN, J., concur.