UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

FREDERICK A. LEWIS,
            *Plaintiff-Appellant,*

v.

WELDOTRON CORPORATION; KAISER
ALUMINUM AND CHEMICAL
CORPORATION, d/b/a Kaiser
Refractories,

            *Defendants-Appellees.*

No. 99-2216

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-98-1466-JFM)

Argued: November 3, 2000

Decided: March 12, 2001

Before NIEMEYER and KING, Circuit Judges, and
Margaret B. SEYMOUR, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Seymour wrote the opinion,
in which Judge Niemeyer and Judge King joined.

_____

## COUNSEL

**ARGUED:** John Robert Sutherland, SUTHERLAND & BRINSTER,
P.A., Baltimore, Maryland, for Appellant. Michael Thomas Wharton,

WHARTON, LEVIN, EHRMANTRAUT, KLEIN & NASH, P.A., Annapolis, Maryland, for Appellee Kaiser; William N. Zifchak, SASSCER, CLAGETT & BUCHER, Upper Marlboro, Maryland, for Appellee Weldotron. **ON BRIEF:** Kristen A. Brinster, SUTHERLAND & BRINSTER, P.A., Baltimore, Maryland, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

SEYMOUR, District Judge:

Frederick A. Lewis brought this action against Weldotron Corporation ("Weldotron") and Kaiser Aluminum and Chemical Corporation ("Kaiser"). Lewis' claims stem from an injury in which his leg was caught between the conveyors of a Weldotron shrink wrap machine and amputated. Lewis alleges negligence, strict liability, and breach of express and implied warranties with respect to the design and manufacture of Weldotron's shrink wrap machine and its associated conveyors. The district court granted summary judgment in favor of Weldotron and Kaiser after determining they were immune from liability under Maryland's Statute of Repose, Md. Code Ann., Cts. & Jud. Proc. § 5-108(a) (1974, 1998 Repl. Vol.). Finding no error, we affirm.

I.

In 1965, Kaiser acquired a brick manufacturing plant located in Frostburg, Maryland. Pallets of brick and other refractory materials manufactured at Kaiser's plant were packaged manually by wrapping the pallets with corrugated paper and steel bands. In an effort to reduce costs and increase output, Kaiser purchased an automated shrink wrap system in 1969. The system, which is comprised of a shrink wrap machine and its associated conveyors, was designed and manufactured by Weldotron.

Kaiser used the shrink wrap system from June 24, 1969, until it closed its plant in August 1980. On May 22, 1986, Mount Savage Firebrick Company ("Mount Savage") purchased Kaiser's brick manufacturing plant and all of its equipment, including the shrink wrap system. The system has operated continuously from May 1986 until the present.

On May 11, 1995, Lewis, who was employed by Mount Savage, was assigned to operate the shrink wrap system. Lewis observed a pallet of bricks wedged between two different sets of conveyors and attempted to dislodge the pallet by pushing it. Lewis slipped while pushing, trapping his leg in an unguarded opening between the conveyors. Lewis was unable to free his leg or turn off the shrink wrap system. The weight of approaching pallets eventually amputated Lewis' left leg.

Lewis filed a complaint in the United States District Court for the District of Maryland on May 7, 1998. Lewis alleged negligence, strict liability, and breach of warranty. The district court granted summary judgment on all claims in favor of Weldotron and Kaiser on August 23, 1999.

II.

Lewis appeals the district court's grant of summary judgment. The specific issue on appeal is whether the district court erred in concluding that the shrink wrap system designed and manufactured by Weldotron was an improvement to real property under Maryland's Statute of Repose, Md. Code Ann., Cts. & Jud. Proc. § 5-108(a) (1974, 1998 Repl. Vol.). We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court and viewing facts and reasonable inferences in the light most favorable to the nonmoving party. *Binakonsky v. Ford Motor Co.*, 133 F.3d 281, 284-85 (4th Cir. 1998). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 285.

Maryland's Statute of Repose provides, in pertinent part:

> (a) Injury occurring more than 20 years later. — Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

Md. Code Ann., Cts. & Jud. Proc. § 5-108(a). The statute of repose precludes all actions that meet two requirements: "(1) the plaintiff's injuries must have resulted from the alleged defective and unsafe condition of 'an improvement to real property'; and (2) 20 years must have passed since the 'entire improvement first bec[ame] available for its intended use.'" *Rose v. Fox Pool Corp.*, 335 Md. 351, 360, 643 A.2d 906, 910 (1994) (quoting § 5-108(a)). Furthermore, Maryland's Statute of Repose applies to claims against manufacturers of any product other than those containing asbestos. *Id.* at 374, 643 A.2d at 917; *see also First United Methodist Church v. United States Gypsum Co.*, 882 F.2d 862, 865 (4th Cir. 1989), *cert. denied*, 493 U.S. 1070 (1990).

Because Weldotron manufactured the shrink wrap system at issue in this case, § 5-108(a) is applicable. The parties agree that more than twenty years have passed since the shrink wrap system first became available for its intended use, June 24, 1969, and the date of Lewis' injury, May 11, 1995. Accordingly, the dispositive issue is whether the shrink wrap system is "an improvement to real property."

The district court determined that, because the system was an improvement to real property, Weldotron was entitled to protection under the statute of repose. On appeal, Lewis argues that the district court erred in failing to find that the shrink wrap system is personal property, thereby falling outside the ambit of § 5-108(a). We disagree.*

---

*Because we conclude that Weldotron falls within the protection of § 5-108(a) and, therefore, cannot be held liable for Lewis' injuries, Kaiser, as a former plant owner, also is protected by the statute of repose, owing no duty to Lewis as the employee of a subsequent purchaser of the plant and the shrink wrap system.

Section 5-108 does not define "an improvement to real property." Moreover, there is no legislative history explaining the term. In fact, other than the present case, we are aware of only two Maryland cases that have interpreted the meaning of § 5-108(a). These two cases are *Rose* and *Allentown Plaza Assoc. v. Suburban Propane Gas Corp.*, 43 Md. App. 337, 405 A.2d 326 (1979).

The *Rose* court acknowledged that, for purposes of applying a statute of repose, there are two general approaches to determine whether an object constitutes "an improvement to real property." *Rose*, 335 Md. at 375, 643 A.2d at 918; *see also Allentown*, 43 Md. App. at 344, 405 A.2d at 331. The first approach is a common law fixture analysis. *Rose*, 335 Md. at 375, 643 A.2d at 918. Under a fixture analysis, a court must look at the "degree of annexation and the physical size of the object to determine whether a particular object qualifies as an 'improvement to real property.'" *Id.* The second approach, which the majority of courts utilize, is a "common sense" or "common usage" analysis. *Id.* at 375-76, 643 A.2d at 918 (citing *Allentown*, 43 Md. App. at 345, 405 A.2d at 331). The relevant inquiry under this analysis "is whether the object is an improvement within the common, dictionary meaning of that term." *Id.*

Adopting the "common sense" approach, the *Rose* court turned to Black's Law Dictionary for a definition of "improvement." *Id.* Black's defines improvement as:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset. Such expenditures are capitalized as part of the asset's cost.

Black's Law Dictionary 757 (6th ed. 1990). In addition to the common usage of the term "improvement," the *Rose* court noted that common sense dictates the following factors also should be considered

when making a case by case determination as to whether an object is "an improvement to real property" within the purview of § 5-108(a): (1) the nature of the addition or betterment; (2) its permanence and relationship to the land and its occupants; and (3) its effect on the value and use of the real property. *Id.* at 376-77, 643 A.2d at 918; *see also Allentown*, 43 Md. App. at 346, 405 A.2d at 332.

In the present case, little doubt exists that the shrink wrap system was a valuable addition to the Kaiser plant. The deposition testimony of Lawrence Kessler, Kaiser's Chief Industrial Engineer, and John Stevens, Kaiser's General Foreman, indicates that the system was purchased to reduce the costs of packaging and shipping refractory products. Similarly, the system significantly increased production. The addition of the system in 1969 was not made to repair or replace an existing shrink wrap system, but instead represented a cheaper, faster method of packaging bricks at Kaiser. Moreover, the shrink wrap system required labor to be assembled and was capitalized. Employees from both Kaiser and Weldotron spent weeks assembling the system that cost several thousands of dollars to purchase. Because the system offered a number of benefits to Kaiser, including a more cost-effective and better packaged product, the system clearly enhanced the value and utility of the real property on which it was located. Overall, the system embodied a new and innovative means to further the purposes of Kaiser, i.e., the manufacture of refractory products. Thus, the shrink wrap system meets the definition of "improvement" found in Black's Law Dictionary.

We next turn our attention to the additional three factors set forth in *Rose*. In this case, the system is attached to the real property, and the facts establish that Kaiser intended the system to become a part of its everyday manufacturing process. Even today, the two conveyor belts, the oven assembly, and the component motors are bolted to the concrete floor of the plant. Stabilizing angle irons are welded to the conveyors and bolted to the floor. Steel guards are mounted in the floor to protect the drive motors from being struck by forklift trucks. The oven control panel is hard wired into the plant's electrical system. Attached pipes deliver natural gas necessary for the operation of the system from the plant to the shrink wrap machine.

Lewis argues that the shrink wrap system is not permanent because a trained individual could remove the system from its location within

three days. However, if the system were removed, there would be numerous holes left in the concrete floor from the anchoring bolts. Similarly, the three-inch diameter gas lines would need to be capped off where they had been connected to the system.

Mount Savage continues to use the shrink wrap system as it was originally installed over thirty years ago. The system enhances the value of the premises. According to Robert Rost, President of Mount Savage, the system is an integral part of the brick manufacturing process. Thus, the system satisfies the criteria enunciated in *Rose*. We conclude that the shrink wrap system constitutes an "improvement to real property" within the meaning of § 5-108.

Lewis asserts that the Agreement of Sale between Kaiser and Mount Savage is important in our analysis of whether the shrink wrap system is an improvement within the scope of § 5-108(a). Specifically, paragraph 17 of the Agreement of Sale states: "It is agreed that this Sale includes all machinery and all other personal property owned by [Kaiser] on the Premises. . . ." Lewis construes this contractual language to mean that Kaiser considered the shrink wrap system to be merely personal property and not an improvement to real property. However, the classification of the shrink wrap system as personal property in the Agreement of Sale is inconsequential. It is for the court to decide as a matter of law whether the system is an improvement to real property. *Accord Adair v. Koppers Co.*, 741 F.2d 111, 114 (6th Cir. 1984) (testimony of plaintiff's expert that a product was not an "improvement to real property" was irrelevant since only a court can make that determination as a matter of law); *Stone v. United Eng'g*, 197 W. Va. 347, 357, 475 S.E.2d 439, 449 (1996) (classification of a product as either personal property or real property in an asset purchase agreement is irrelevant since the determination as to whether a particular product is an "improvement to real property" for purposes of the statute of repose is a question of law for the court); *Krull v. Thermogas Co.*, 522 N.W.2d 607, 611 (Iowa 1994) (liquid propane furnace gas control valve was "improvement to real property" within the meaning of the statute of repose despite contentions that the valve fell within the definition of goods under Iowa's Uniform Commercial Code); *Rose*, 335 Md. at 375, 643 A.2d at 917-18 (classification of a product as a consumer good is not dispositive with respect to the question of whether a product may be considered an

"improvement to real property" within the meaning of the statute of repose). The language contained in the Agreement of Sale does not persuade us to alter our conclusion that the shrink wrap system is an improvement to real property.

Lewis also directs our attention to four cases, each from a different jurisdiction, which he argues support his position that the system should not be classified as an improvement to real property. However, as the district court aptly pointed out, each of the cases cited by Lewis is distinguishable from the case at bar. In *Ritter v. Abbey-Etna Mach. Co.*, 483 N.W.2d 91, 93-94 (Minn. Ct. App. 1992), the Minnesota Court of Appeals determined that the state's statute of repose did not "include manufacturers of production machinery where the machinery . . . is not integral to and incorporated into the design of the building." Similarly, in *Condit v. Lewis Refrigeration Co.*, 101 Wash. 2d 106, 111, 676 P.2d 466, 468 (1984), the Supreme Court of Washington concluded that Washington's Statute of Repose was not so broad as to include "manufacturers of heavy equipment or nonintegral systems within [a] building." Both the Minnesota and Washington Statutes of Repose are distinguishable from Maryland's statute, which expressly includes manufacturers. The *Rose* court acknowledged this difference. Lewis' reliance on *Ritter* and *Condit* is misplaced.

Lewis further argues that *Beals v. Superior Welding Co.*, 273 Ill. App. 3d 655, 653 N.E.2d 430, *appeal denied*, 164 Ill. 2d 558, 660 N.E.2d 1265 (1995), is persuasive. In *Beals*, however, the court defined an "improvement" as an object which does not have "an identity separate from the overall system or building in which it is located." *Id.* at 662, 653 N.E.2d at 435. While the *Beals* court listed several of the same factors as those articulated in *Rose* for determining whether an object is an improvement to real property, the underlying notion of what constitutes an improvement in Maryland greatly differs from that of Illinois. Maryland case law makes no distinction as to the identity of a putative improvement. The object is either an improvement or it is not. We have found no indication that the courts of Maryland are concerned with whether an object has "an identity separate from the overall system or building in which it is located." Therefore, *Beals* is distinguishable.

Finally, Lewis refers to *Ilich v. John E. Smith Sons Co.*, 145 N.J. Super. 415, 367 A.2d 1216 (1976). In *Ilich*, the court utilized a fixture

analysis when determining that the manufacturer of a machine was not protected by New Jersey's Statute of Repose. *Id.* at 418-19, 367 A.2d at 1218. However, as discussed above, the *Rose* court explicitly rejected a fixture analysis and opted for a common sense approach, which is now the test in Maryland. Thus, *Ilich* also is distinguishable.

## III.

For the reasons stated above, we conclude that the shrink wrap system at issue in this case is "an improvement to real property" within the meaning of Maryland's Statute of Repose, Md. Code Ann., Cts. & Jud. Proc. § 5-108(a). Accordingly, we affirm the decision of the district court.

*AFFIRMED*