**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 15-2263**

———————

JANET D. LEICHLING, individually, surviving spouse, and
Personal Representative of the Estate of John G. Leichling;
DAWN M. ROSE, surviving daughter of John G. Leichling;
GREGORY A. LEICHLING, surviving son of John G. Leichling;
CATHERINE L. TIMMS, surviving daughter of John G. Leichling;
HELEN CATTERTON, surviving daughter of John G. Leichling;
JOHN R. LEICHLING, surviving son of John G. Leichling,

        Plaintiffs - Appellants,

    v.

HONEYWELL INTERNATIONAL, INC.,

        Defendant - Appellee.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Richard D. Bennett, District Judge.
(1:14-cv-02589-RDB)

———————

Argued:  October 25, 2016          Decided:  December 2, 2016

———————

Before AGEE, DIAZ, and THACKER, Circuit Judges.

———————

Affirmed by published opinion.  Judge Thacker wrote the opinion,
in which Judge Agee and Judge Diaz joined.

———————

**ARGUED:** Jeffrey John Utermohle, LAW OFFICES OF PETER G. ANGELOS,
P.C., Baltimore, Maryland, for Appellants.   Michael David
Daneker, ARNOLD & PORTER LLP, Washington, D.C., for Appellee.
**ON BRIEF:** Gary J. Ignatowski, Patrick A. Ciociola, LAW OFFICES
OF PETER G. ANGELOS, P.C., Baltimore, Maryland, for Appellants.

Anne P. Davis, Eric A. Rey, Allyson Himelfarb, ARNOLD & PORTER LLP, Washington, D.C., for Appellee.

THACKER, Circuit Judge:

The survivors of John R. Leichling sued Honeywell International, Inc., alleging that Mr. Leichling's fatal lung cancer resulted from exposure to toxins during his employment at the Dundalk Marine Terminal in Baltimore, Maryland, where Honeywell operates a chemical manufacturing plant. Decades earlier, Honeywell began using chemical refuse to create a landmass on which the Marine Terminal later sat. The district court dismissed the suit pursuant to Maryland's 20-year statute of repose, which bars untimely claims for injuries resulting from a "defective and unsafe condition of an improvement to real property." Md. Code Ann., Cts. & Jud. Proc. § 5-108(a). The court reasoned that, because the refuse filled otherwise aquatic areas and allowed development of the Marine Terminal, it was an improvement to real property. This appeal followed and, for the reasons below, we affirm.

I.

A.[1]

From 1854 through 1985, Honeywell International, Inc. ("Appellee") manufactured chromium, a heavy metal, at a plant in

_____

[1] Because we are ruling on a motion to dismiss, we assume as true the facts as stated in the complaint. See A Soc'y Without A Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011).

3

an area now known as Harbor Point in Baltimore, Maryland.[2]  This operation produced as much as 100,000 tons of waste per year, including chromium ore processing residues ("COPR").  COPR contains hexavalent chromium, which the Environmental Protection Agency classifies as a powerful carcinogen.  Hexavalent chromium is water soluble and thus may spread through surface water, groundwater, and drinking water, and exposure may also occur through dust and dirt.  The complaint states Appellee knew of the dangers associated with COPR as early as the 1930s.

Beginning in the 1940s, Appellee stockpiled COPR waste for extended periods at and around docks, piers, wharves, and other work areas at Harbor Point.  During the same period, Appellee owned 85 acres of land adjacent to the Dundalk Marine Terminal.  The following decade, Appellee began using COPR waste and other material as fill to expand this area.

In 1967, the Maryland Port Authority bought Appellee's 85-acre property and used it to expand the Marine Terminal.[3]  The

---

[2] According to the complaint, Appellee bears successor liability for predecessor corporations that maintained chromium processing and production operations at Harbor Point, including Mutual Chemical Company, Allied Chemical & Dye Corporation, Allied Chemical Corporation, and Allied Signal, Inc., the last of which merged with Appellee in 1999.

[3] Appellee provided its agreement with the Port Authority as an attachment to its briefing in support of dismissal.  See J.A. 220–26.  Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

contract between Appellee and the Port Authority required Appellee to deposit in the Marine Terminal any COPR fill Appellee produced at its Baltimore plant, aside from quantities Appellee required for its own use, or pay the Port Authority for failing to do so. The Port Authority continued to utilize COPR fill for the Marine Terminal expansion until 1976.

B.

The survivors of John R. Leichling ("Appellants") brought various tort claims against Appellee in the Circuit Court for Baltimore City, Maryland, asserting Mr. Leichling's 2012 death from lung cancer resulted from COPR exposure during his employment as a longshoreman from 1973 through 2001 at the Dundalk Marine Terminal.

Appellee removed the case to the United States District Court for the District of Maryland and moved to dismiss, arguing Maryland's statute of repose bars Appellants' claims and, alternatively, Appellants fail to state plausible claims for relief. While the motion was pending, Appellants filed a Second Amended Complaint, to which Appellee responded via reply brief rather than a second motion to dismiss. The district court agreed with Appellee, holding Maryland's statute of repose bars Appellants' claims. The district court thus dismissed the claims with prejudice and this appeal followed.

5

## II.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is subject to de novo review.  See King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016).  An affirmative defense permits 12(b)(6) dismissal if the face of the complaint includes all necessary facts for the defense to prevail.  See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).  A court passing on a motion to dismiss may consider attachments to a complaint or the motion to dismiss if "integral to the complaint and authentic."  Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).  Because this is a diversity case, Maryland law applies.  See 28 U.S.C. § 1652; Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

## III.

In the 1960s and 1970s, the demise of privity of contract as a defense and the introduction of the discovery rule increased liability for defective or unsafe conditions in improvements to real property.  See Rose v. Fox Pool Corp., 643 A.2d 906, 912–13 (Md. 1994).  In response, states enacted statutes protecting those who would be particularly susceptible to claims arising from such improvements; Maryland's statute of repose is one such statute.  See id.  The statute provides, with limited exceptions,

6

> no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

Md. Code Ann., Cts. & Jud. Proc. § 5-108(a). After courts applied the statute to bar claims against asbestos manufacturers, the Maryland General Assembly adopted an amendment to exclude asbestos from the protection of the statute of repose. This exception was adopted only after "considerable debate within the legislature." Rose, 643 A.2d at 914 (discussing § 5-108(d)(1)).

Otherwise, the statute bars suits in which (1) a plaintiff's alleged injuries resulted from an "alleged defective and unsafe condition of 'an improvement to real property'"; and (2) 20 years have elapsed "since the 'entire improvement first be[came] available for its intended use.'" Rose, 643 A.2d at 910 (alteration in original) (quoting § 5-108(a)). Here, Appellants only challenge the district court's analysis of the first prong.

To determine whether an item is an "improvement," courts apply a "common sense" test, which defines an improvement as

> [a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting

7

to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset. Such expenditures are capitalized as part of the asset's cost.

Rose, 643 A.2d at 918 (alteration in original) (quoting Black's Law Dictionary 757 (6th ed. 1990)). In making this determination, courts consider "the nature of the addition or betterment, its permanence and relationship to the land and its occupants, and its effect on the value and use of the property." Id. (citing Allentown Plaza v. Suburban Propane, 405 A.2d 326, 332 (Md. 1979)).

Courts should not "artificially extract each component from an improvement to real property and view it in isolation." Hickman, ex rel. Hickman v. Carven, 784 A.2d 31, 38 (Md. 2001) (quoting Hilliard v. Lummus Co., 834 F.2d 1352, 1356 (7th Cir. 1987)). Instead, an item may be "an improvement if it is an integral component of a project that itself would qualify as an improvement." Id.[4] For example, in Hickman, ex rel. Hickman v.

---

[4] Although the Hickman court merely assumed that the integral component doctrine applied for purposes of resolving that case, the doctrine has been widely accepted in other jurisdictions. See, e.g., Associated Elec. & Gas Ins. Servs. v. BendTec, Inc., 822 F.3d 420, 424 (8th Cir. 2016); Ambrosia Land Invs., LLC v. Peabody Coal Co., 521 F.3d 778, 781–83 (7th Cir. (Continued)

8

Carven, the Maryland Court of Appeals held that the statute of repose did not bar claims of residential subdivision lot owners against subdivision developers for demolishing a burial site. See id. at 38–39. The court reasoned that, though the developers may have removed the burial site while developing the land, doing so was not only unnecessary for development but also illegal and thus not an integral component of development. See id. Conversely, Rose applied the statute to bar a swimmer's claims for injuries against a pool manufacturer because the pool was "a permanent addition, excavated and built into the real property, which enhances the value of the entire premises." 643 A.2d at 918.[5]

---

2008); Durham v. Herbert Olbrich GMBH & Co., 404 F.3d 1249, 1255–57 (10th Cir. 2005); Adair v. Koppers Co., Inc., 741 F.2d 111, 114–16 (6th Cir. 1984). We thus have little reason to doubt that it would find favor with Maryland courts.

[5] This is not our first occasion to interpret Maryland's statute of repose. In Pippin v. Reilly Industries, Inc., for example, we applied the statute to bar wrongful death claims against a utility pole designer stemming from the decedent's collision with a utility pole. See 64 F. App'x 382, 386 (4th Cir. 2003) (per curiam). We reasoned, because the wires and transformers had to sit in a safe position, "the pole was integral to provision of electricity." Id. We also noted that although the company could have used other means to achieve this end, the pole was nonetheless an "ordinary and reasonable means" of doing so. Id.; see also Lewis v. Weldotron Corp., 5 F. App'x 265, 268–69 (4th Cir. 2001) (barring claims stemming from shrink wrap system in brick manufacturing plant that required labor and capital for installation, enhanced value and utility of (Continued)

Here, like the district court, we are satisfied that Appellee's use of COPR to expand and develop the Dundalk Marine Terminal is -- if not an improvement to real property standing alone -- at least an integral component of the project. See Hickman, 784 A.2d at 38.

Appellants argue against this conclusion, stating, "Honeywell's toxic dumping made the area unsuitable for human use and development because it posed a tremendous and known threat to human health and the environment." Appellants' Br. 13 (emphasis in original). But neither the statute's text nor its legislative history support this theory as grounds for rendering the statute inapplicable. The language of the statute does not except hazardous conditions, much less known hazardous conditions. Indeed, such an exception would swallow the rule, which only applies to an "alleged defective or unsafe condition." § 5-108(a). Moreover, in enacting the exception for asbestos manufacturers, the Maryland legislature was quite clear that the exception was limited to asbestos. See Rose, 643 A.2d at 917 ("The General Assembly expressly identified certain defendants to which subsection (a) does not apply."). We are

property, and was affixed to property with gas lines and bolts in concrete floor).

10

not positioned to create an additional exception for chromium manufacturers.

Appellants further argue the use of COPR has decreased the value of the land in comparison to its hypothetical value with less hazardous fill. See Appellants' Br. 17. The "common sense" test Maryland courts derive from the statute, however, belies this assertion. Rose, 643 A.2d at 918. Appellants' allegations establish that Appellee utilized COPR fill to create a vast 85-acre parcel and transferred the parcel to the Maryland Port Authority, which used -- and continues to use -- the parcel as an active marine terminal. This expansion thus bestowed greater utility to both Appellee and the Maryland Port Authority, see id., regardless of the wisdom of using hazardous materials to exact the expansion.

Indeed, viewing the expansion as a whole rather than the COPR fill "in isolation," the record establishes that the fill was, in fact, an "integral component" to developing the parcel for its use as the Marine Terminal. Hickman, 784 A.2d at 38. Appellants' reliance on Hickman is unavailing; there, the defendant's burial site removal was not only "unlawful and prohibited" but also "not necessary" to develop the land. Id. at 38–39. Here, however, Appellee could not have developed the parcel into the Marine Terminal without a surface on which to build. The crucial difference between these cases thus lies in

11

the purpose of the alleged improvement, not its alleged legal status. To hold otherwise would render the statute inapplicable merely if a plaintiff could concoct an allegation of illegality, as Appellants have done here. See, e.g., Appellants' Reply Br. 7–9.

The agreement between Appellee and the Port Authority shows the crucial roles -- both functional and financial -- the COPR fill played in expanding the Marine Terminal. Indeed, the agreement deemed the 85-acre parcel "required" for the "purpose of expanding the Dundalk Marine Terminal." J.A. 221. Moreover, the agreement entitled the Port Authority to payment if Appellee failed to deposit COPR fill at the Marine Terminal, see id. at 223, indicating the financial significance of the fill to the Port Authority.

Appellee's use of COPR fill in creating the landmass that later became the base for a large portion of the Dundalk Marine Terminal is thus an improvement to that property pursuant to Maryland's statute of repose. Because Appellants concede that they brought their claims outside of the statute's 20-year time bar, the district court did not err in dismissing these claims.

IV.

For the foregoing reasons, we affirm the district court's dismissal.

AFFIRMED